*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0229P (6th Cir.)
File Name: 01a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROSE WOJCIK, an individual;
RICHARD WOJCIK, Trustee for
the Rose Wojcik Living Trust;
and EDGAR, INC., d/b/a
FANNY'S, a Michigan
Corporation,
       *Plaintiffs-Appellants,*

    *v.*

THE CITY OF ROMULUS, a
Michigan Municipal
Corporation; PHILLIP
ARTHURHULTZ; MAXINE
PERRY; and BETTY PULLIAM,
       *Defendants-Appellees,*

THE MICHIGAN LIQUOR
CONTROL COMMISSION, an
agency of the State of
Michigan,
       *Defendant.*

No. 99-2413

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 96-71501; 97-71461—Lawrence P. Zatkoff,
Chief District Judge.

Argued: January 24, 2001

Decided and Filed: July 18, 2001

Before: BATCHELDER and CLAY, Circuit Judges;
POLSTER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Robert S. McWhorter, SCHAFER & WEINER, Bloomfield Hills, Michigan, for Appellants. Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, J. Courtney Smith, DEPARTMENT OF ATTORNEY GENERAL, Farmington, Michigan, for Appellees. **ON BRIEF:** Robert S. McWhorter, SCHAFER & WEINER, Bloomfield Hills, Michigan, for Appellants. Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, J. Courtney Smith, DEPARTMENT OF ATTORNEY GENERAL, Farmington, Michigan, for Appellees.

_____

**OPINION**

_____

CLAY, Circuit Judge. Plaintiffs-Appellants Rose Wojcik, Richard Wojcik as Trustee of the Rose Wojcik Living Trust, and Edgar, Inc., (collectively, "Plaintiffs") appeal from the district court's grant of summary judgment in favor of

_____

[*] The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

Defendants-Appellees City of Romulus, Michigan, and Michigan Liquor Control Commission members Phillip Arthurhultz, Maxine Perry, and Betty Pulliam (collectively, "Defendants") in this civil rights suit under 42 U.S.C. § 1983 challenging Defendants' refusal to transfer an entertainment permit for use in conjunction with a liquor license. In their complaint Plaintiffs alleged several constitutional violations stemming from the denial of their transfer requests: (1) impairment of contracts in violation of U.S. CONST. art. I, § 10; (2) violation of due process rights under the Fifth and Fourteenth Amendments; (3) improper taking of property in violation of the Fifth and Fourteenth Amendments; and (4) violation of the First Amendment right to freedom of speech. On cross-motions for summary judgment the district court determined that Plaintiffs were not entitled to transfer of the entertainment permit and that Defendants were entitled to judgment as a matter of law. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## I.

From 1951 to 1986, Rose Wojcik's family owned a bar located at 17421 Huron Drive in Romulus, Michigan (the "bar"). Mrs. Wojcik obtained sole ownership of the bar upon the death of her husband in 1965. On April 9, 1986, she sold the bar operations, including its Class C liquor license, a dance permit and a Sunday sales permit to Gampp Enterprises ("Gampp") under an installment contract for a sum of $85,000.[1] This assignment and transfer from Wojcik to Gampp was approved by both the City of Romulus Council (the "City" or the "Council") and the Michigan Liquor

---

[1] Under this agreement, Mrs. Wojcik maintained ownership of the real property upon which the bar was located.

Control Commission ("MLCC") as required under Michigan law.[2]

Gampp later applied to the City of Romulus and the MLCC for an entertainment permit for the purpose of having a male revue at the bar.[3]  The City of Romulus, through the Romulus City Council, unanimously approved the issuance of the entertainment permit to be held in conjunction with the Class C liquor license and dance and Sunday sales permits. (J.A. at 1549, 1554.)  The MLCC also approved the issuance of the new entertainment permit to Gampp.

In 1992, Gampp became delinquent on the payments required under its installment contract with Mrs. Wojcik; but Mrs. Wojcik agreed to forbear eviction and acceleration of the outstanding balance in exchange for a security interest in all of Gampp's assets.  On October 6, 1992, Mrs. Wojcik and Gampp executed a security agreement providing that if Gampp defaulted it would reassign "all interest in and to said business" to Mrs. Wojcik, "subject to consent and approval" of the MLCC. (J.A. at 1556.)  Mrs. Wojcik also filed a financing statement with the State of Michigan, thereby perfecting her security interest in "all [of Gampp's] contract

---

[2]The MLCC is vested with complete authority over the sale of alcoholic beverages within the state.  MICH. CONST., art. 4, § 40; MICH. COMP. LAWS 436.1.  The MLCC's administrative regulations state that no establishment with a liquor license shall allow dancing or other forms of entertainment without a permit.  MICH. ADMIN. CODE r. 436.1407 (1983 Supp.).  Michigan law also requires approval of the chief local law enforcement officer, the local legislative body, and the MLCC for all assignments of licenses or permits.  MICH. ADMIN. CODE r. 436.1407(4) (1983 Supp.) and 436.1105.

[3]The Michigan Administrative Code provides that on-premises liquor licensees "shall not allow dancing . . . or other performance for public viewing on the licensed premises, unless the on-premises licensee has been granted an entertainment or dance-entertainment permit by the [MLCC]."  MICH. ADMIN. CODE r. 436.1407(1).

face and as applied to Plaintiffs.  The onus was therefore on Plaintiffs to establish their operation in an area that is not prohibited by the zoning ordinance.

Inasmuch as the City had an independent content-neutral reason for denying the transfer of the entertainment permit, used a narrowly tailored means to achieve that end, and left open alternative channels of expression, its denial of Plaintiffs' requests to transfer the entertainment permit was a reasonable restriction on expressive conduct.  We therefore find no reason to disturb the district court's holding.

### III.

Because they were legally bound to wait for municipal approval prior to approving Plaintiffs' request to transfer the entertainment permit, the Commissioners of the MLCC were not the source of Plaintiffs' alleged injuries and were therefore entitled to summary judgment as a matter of law. Plaintiffs' claims against the City of Romulus were also properly adjudicated.  Insofar as Plaintiffs had no constitutionally protected property interest in the transfer of the entertainment permit, they were not entitled to procedural or substantive due process protections prior to the denial of their requests.  In addition, because there was no legislative action in this case to create a change in law, the Council's actions did not amount to an unconstitutional impairment of contracts.  Finally, Plaintiffs have failed to show that the refusal to transfer the entertainment permit constituted anything other than a permissible time, place and manner restriction on their First Amendment rights to freedom of speech and expression.  We therefore **AFFIRM** the district court's grant of Defendants' motion for summary judgment and its denial of Plaintiffs' motion for summary judgment.

to transfer the permit. Since the bar had been shut down for some time, Wojcik's attempt to revive an adult entertainment venue--then in violation of a City ordinance--understandably drew concern from both the Council as well as members of the community. Plaintiffs have not shown any reason why the City was not entitled to apply the ordinance to their transfer requests; nor have they adduced any evidence that would suggest that the application of the zoning ordinance was discriminatory in any way.

In addition, we believe that refusing to transfer a lone entertainment permit due to its proximity to certain family-oriented establishments is perhaps the narrowest means possible of serving the City's substantial interest in preventing the secondary effects of adult entertainment. *See Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 71 (1976) (holding that the "the city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect" and that a municipality may control the location of theaters and other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city).

For the same reason, we find that the City has left open reasonable alternative means of communication. Plaintiffs' only argument on this point is that Defendants have never offered to provide an alternative forum to provide adult entertainment. Apparently, Plaintiffs believe that they are somehow entitled to establish a for-profit adult entertainment facility *anywhere* in the City of Romulus at the Council's acquiescence. But the City ordinance does not amount to a total ban on adult entertainment. Instead, the ordinance only prohibits this type of activity within a certain distance of specified family-oriented community institutions. The City is not obligated to sign off on any and all form of expression; rather, as we have already discussed, it may place reasonable restrictions on such expression in the interest of the community. We find this limited restriction reasonable on its

rights and general intangibles now owned or hereafter acquired [sic] . . . and all . . . personal property of every kind and description now owned or hereafter acquired [sic]." (J.A. at 1561.)[4]

By January of 1993, Gampp was in default. Since Gampp was no longer able to maintain liability insurance, its operations were shut down by the MLCC. Mrs. Wojcik then filed a complaint in the Wayne County Circuit Court, seeking to forfeit Gampp's assets and to obtain a temporary restraining order prohibiting Gampp from impairing or selling the assets of the bar. (J.A. at 105.) On September 10, 1993, the Wayne County Circuit Court entered a default judgment pursuant to a stipulation by the parties reassigning to Mrs. Wojcik all of the assets of the bar, including its liquor license according to the terms of the reassignment (security) agreement entered into by the parties, which made the reassignment subject to the consent and approval of the MLCC. (J.A. at 1562-63.) However, the judgment makes no mention of the reassignment of any permits related to the Class C liquor license.

In 1994 Mrs. Wojcik's grandson, Richard Wojcik, contacted the MLCC and requested the reassignment of the liquor license and all of the related permits, including the Sunday sales permit and the entertainment permit, from Gampp to the Rose Wojcik Living Trust ("Wojcik").[5] But the

---

[4]Although Wojcik now claims that this instrument granted her an interest in the entertainment permit, the agreement does not expressly state so. Instead, the agreement specifically provides that "[i]n the event of such default, Buyer agrees to assign interest which it may have in and to certain Liquor Control Commission license(s) presently in existence at the time on the premises, subject consent and approval the [MLCC], . . . ." (J.A. at 1556.)

[5]After Gampp defaulted on the installment contract, Rose Wojcik created a revocable living trust, (J.A. at 1576), and appointed her grandson, Richard Wojcik, as trustee. Mrs. Wojcik also executed a power

MLCC informed Richard Wojcik that in order to request a reassignment, he must first obtain the approval of the City of Romulus as was required under Michigan state law.[6] Richard Wojcik then contacted the City of Romulus and requested its approval of the reassignment of the liquor license along with all of the related permits (dance, Sunday Sales, and entertainment permit) from Gampp to Wojcik.

The Romulus City Council met to consider Wojcik's request. In the process of obtaining approval of the local law enforcement authorities, the Council discovered that during the bar's last year of operation, Gampp failed to pay real and personal property taxes to the City. On August 23, 1994, Romulus Police Chief Robert Brown recommended to the City that it transfer the liquor license and dance permit to Mrs. Wojcik if she paid all of Gampp's outstanding taxes. (J.A. at 1573.) At its regular meeting on September 6, 1994, the Council adopted a resolution conditionally approving the transfer of the Class C liquor license with a dance permit from Gampp to Wojcik subject to Wojcik's payment of Gampp's outstanding real and personal property taxes. (J.A. at 1574-75.) But the Council refused to transfer the entertainment permit.[7] The MLCC would not accept a conditional approval of the liquor license and refused to transfer the liquor license or any of the permits to Wojcik. Subsequently, Wojcik partially complied with the Council's demands by paying Gampp's outstanding property taxes; however, she refused to pay the personal taxes. (J.A. at 104-05.)

---

of attorney letter naming Richard Wojcik as her "attorney in fact" with power to transact all of her business. (J.A. at 1593.)

[6] The MLCC sent Wojcik a local approval requirement notice, dated July 29, 1994.

[7] The Council's resolution did not mention the Sunday sales permit.

Council had an independent basis for its decision; it expressly stated that the basis for its refusal to transfer the entertainment permit was that the bar was located within 500 feet of a church or school in violation of the city zoning ordinance. This ordinance was designed to prevent not topless dancing, but rather the deleterious secondary effects of such entertainment from permeating the fabric of the local community. It is not debatable that the City has a substantial interest in preventing the secondary effects of such entertainment, especially in areas near schools, churches or residential neighborhoods. In order to show that the secondary effects of expressive conduct pose a threat, the city need not "conduct new studies or produce evidence independent of that already generated by other cities . . . so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Erie v. Pap's*, 529 U.S. at 296-97 (quoting *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986)). In this respect, the ordinance and its application are both content-neutral. The Council's application of an existing zoning ordinance is far from a showing of the type of unbridled discretion that Plaintiffs claim amounted to censorship and a prior restraint on their rights to freedom of speech and expression. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990).

Focusing on the Council's statement that the City did not need a "third" topless bar, Plaintiffs argue that it is "arbitrary and capricious" to find that it is permissible for two speakers to express an idea but not a third. However, while the other adult entertainment facilities mentioned by the Council were located near the bar, they were both outside of the 500-foot perimeter established by the zoning ordinance. Moreover, as we alluded to earlier, the fact that the City had previously approved issuance of the entertainment permit to Gampp in the late 1980s, yet rejected Wojcik's transfer request some years later, is no cause for concern; the zoning ordinance in question was not enacted until June 11, 1991--well after Gampp obtained the permit, but long before Plaintiffs sought

succeed on the merits and was properly rejected by the district court.

### D.   Freedom of Speech Claim

Plaintiffs also contend that the City's refusal to transfer the entertainment permit was a form of content-based discrimination in violation of their First Amendment rights to freedom of speech and expression. We find no support for this claim. While it is clear that topless or nude dancing is a protected form of expression, *Barnes v. Glen Theater, Inc.*, 501 U.S. 560; *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 409 (6th Cir. 1997), governmental entities may impose reasonable restrictions on the time, place, or manner of otherwise protected speech if those restrictions (1) have an independent basis not related to the content of that speech, (2) are narrowly tailored to serve a significant governmental interest, and (3) leave open alternative channels of expression or communication of the information. *City of Erie v. Pap's*, 529 U.S. 277 (2000); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989).

Plaintiffs do not directly contest the validity of the Romulus zoning ordinance. Instead, they claim that the ordinance has been applied in a discriminatory and arbitrary fashion. We are unpersuaded by Plaintiffs' contention. At the heart of Plaintiffs' First Amendment claim is their argument that the City's decision not to transfer the entertainment permit was an attempt to stifle their chosen form of expression--adult entertainment. It does appear that the Council members had some antipathy toward allowing another topless bar. One City Council member stated: "We don't need to turn [the bar] into the third topless bar in town. It doesn't fit in this town, it doesn't belong to this town, and I think I speak for the rest of us here . . . ." (J.A. at 1637-38.) Plaintiffs cite this and similar statements as evidence of the Council's general aversion toward adult entertainment and an alleged attempt to regulate the content of expressive speech. However, the

While awaiting action by Romulus on the transfer request, Wojcik entered into a conditional sales contract with Edgar, Inc. ("Edgar") for the sale of the bar as well as the real estate upon which the bar is located. Enforcement of this contract was made subject to Wojcik's ability to transfer the liquor license and all of the permits to Edgar. Edgar then filed an application with the MLCC to transfer the liquor license and all of the permits from Wojcik to Edgar. (J.A. at 1599.) At this point the multiple transfer requests created a two-step process: first, transfer of the liquor license and the related permits from Gampp to the Wojcik Trust; second, a transfer of the same from Wojcik to Edgar. The Romulus City Police Department subsequently conducted an investigation of Edgar and Wojcik. On June 7, 1995, the police chief sent a letter to the City of Romulus referencing its earlier recommendation for conditional approval of the request to transfer the liquor license and what the police chief termed a "dance entertainment permit" from Gampp to Wojcik. (J.A. at 1616.)[8] This letter mentioned that in light of the fact that the MLCC would not accept such a conditional transfer, the City of Romulus Assessor and Treasurer Offices had determined that nothing would be gained by attempting to collect Gampp's outstanding personal property taxes from Wojcik. As a result, the police chief recommended unconditional approval of step one--transfer of the liquor license and the "dance entertainment permit" from Gampp to Wojcik. In a separate letter, the police chief also considered the requested transfer of a liquor license with "dance/entertainment permit" from Wojcik to Edgar. In that letter the police chief recommended that the City determine whether denial of the request would be appropriate given Edgar's intent to operate a lounge offering topless female entertainment in close proximity to a church, and the location of two similar

---

[8]The record is replete with confusing references to a dance permit, entertainment and a dance-entertainment permit. But the parties have agreed that the only matter currently in dispute is the transfer of the entertainment permit.

establishments within one mile of the bar. (J.A. at 1617-18.) In his summary, the police chief stated his belief that it would be in the City's best interest if the Edgar transfer request were denied in whole, or that the entertainment permit at least be denied. (J.A. at 1618.)

On July 24, 1995, the Romulus City Council considered the transfer requests. During the meeting the Council stated that it had originally approved the issuance of the entertainment permit to Gampp in 1988 on the basis of representations that it would be used for purposes of a male revue. The Council anticipated that Gampp "would probably use this permit once a year. And this once a year would be during deer season when the men . . . went off to deer hunt[;] they would bring in male dancers in for this specific time for the women that [were] left [at] home." ( J.A. at 106.) The Council expressed concerns regarding Edgar's intent to operate as a business entity called "Fanny's" that would provide continuous topless entertainment contrary to the Council's original intent. The Council tabled the issue of the transfer requests pending an investigation by the city attorney on whether they should be approved.

At a regular meeting held on August 7, 1995, the Council again considered the transfer requests. The Council Secretary stated:

This is a two-part transfer. The first part is to transfer ownership of the 1992 class C licensed business with the dance and entertainment permit from Gamp [sic] Enterprises to [the] Rose Wojack [sic] living trust, Richard P. Wojack [sic] trustee. . . . The second part of the request would be to - - no, I'm sorry. By council's resolution 94349 council made a motion not to transfer the entertainment permit along with this - - with this request.    The second part of the transfer then would be to transfer it from the Rose Wojack [sic] living trust with

Attempting to characterize the Council's resolution as a legislative act, Plaintiffs focus on the fact that the City Council is the legal legislative body for the City of Romulus and that the Council had previously approved the issuance of an entertainment permit for Gampp. They claim that the City of Romulus had no authority to suspend or revoke an entertainment permit. Thus, Plaintiffs contend that a revocation or denial of the permit "amounted to a deviation from the law and, therefore, constitutes a 'change of law' under the Contract Clause . . . ." (Brief for Appellants at 50.) But Plaintiffs' arguments are mostly circular and conclusory. As we have already discussed, the requests to transfer the entertainment permit were essentially requests for the assignment anew of an entertainment permit--requests over which the City Council was legally obligated and authorized to exercise its discretion by enforcing the municipal ordinance.

In one point in their brief, Plaintiffs allege that the previous grant of an entertainment permit to Gampp constituted a zoning variance which had never been discontinued. But Plaintiffs have not provided any documentation or legal authority to support this claim. The Romulus City Council specifically denied transfer of the entertainment permit because it found that the permit would violate an ordinance prohibiting the location of cabarets within 500 feet of a church, school building, or residential neighborhood. This ordinance was adopted on June 11, 1991--long before both the October 6, 1992 security agreement between Wojcik and Gampp providing for reassignment of the entertainment permit in the event of default and the conditional sales agreement between Wojcik and Edgar. Therefore, the Council's decision not to reassign the entertainment permit was not a change in law, but merely an application of existing law that predated the contractual relationships at issue. Having failed to meet the first prong of the *Energy Reserves Group* test, and the second prong of the *General Motors v. Romein* test, Plaintiffs' impairment of contracts claim cannot

The Supreme Court has recognized three components to the inquiry whether a change in state law has created a substantial impairment of a contractual relationship: (a) whether there is a contractual relationship, (b) whether a change in law impairs that contractual relationship, and (c) whether the impairment is substantial. *General Motors v. Romein*, 503 U.S. 181, 186 (1992); *Linton*, 65 F.3d at 518. In the case at bar, the parties disagree about whether a valid contractual relationship exists. But even assuming the existence of the requisite contractual relationship(s), Plaintiffs' claim must fail, for no change in law has occurred. This conclusion hinges upon our characterization of the City Council's resolution denying the transfer of the entertainment permit. The mere passage of a resolution is not *per se* a legislative act; nor is it true that municipal resolutions can never be deemed legislative acts. Instead, determining whether a resolution is a legislative act depends upon its content:

> Although a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity. Rather, "[w]hether actions . . . are, in law and fact, an exercise of legislative power depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" *INS v. Chadha*, 462 U.S. 919, 103 S. Ct. 2764, 2784, 77 L. Ed. 2d 317 (1983) (discussing Congressional action) (citation omitted). "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." *Yakus v. United States*, 321 U.S. 414, 424, 64 S. Ct. 660, 667, 88 L. Ed. 834 (1944) (citation omitted).

*Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984).

---

Richard P. Wojack [sic] trustee to Edgar, Incorporated with the dance and entertainment permit.

(J.A. at 1649.) The Council gave Plaintiffs' attorney an opportunity to speak on their behalf and also received statements from concerned community members. But no formal evidentiary hearing was held. The Council unanimously approved the reassignment of the liquor license and the dance permit to Wojcik. However, the Council refused to transfer the entertainment permit[9] due to the fact that the bar was within 500 feet of a church or school building, which is prohibited by a City of Romulus zoning

---

[9]We wish to mention a few oddities surrounding the Council's resolution. First, the Council records make no mention of the transfer request filed by Edgar, which was apparently moot due to the denial of the transfer from Gampp to Wojcik. In addition, neither the Council's resolution nor the minutes from its meeting reflect consideration of the Sunday sales permit. But even more perplexing is the fact that the parties on appeal have differing accounts of what the Council actually decided at the August 7, 1995 meeting. Plaintiffs contend that the Council approved transfer of the liquor license and Sunday sales permit, but refused to transfer the dance permit and entertainment permit. The Commissioners of the MLCC claim that the Council only approved the transfer of the liquor license, but voted unanimously to deny the entertainment permit. Meanwhile, Defendant City of Romulus itself contends that its Council approved the transfer of the liquor license, but denied the reassignment of the Sunday sales and entertainment permits. The record contains a copy of the Council's August 7, 1995 resolution, which clearly states that it approved the request to transfer the liquor license with a dance permit, but denied the transfer of the entertainment permit. Interestingly, the copy of the resolution included in the record seemed to originally indicate "Dance-Entertainment Permit", but the word "Entertainment" has been crossed-out with type-writing. It is impossible to determine whether this deletion was accomplished on the original document itself. But, again, this contradictory paper trail is of no moment inasmuch as the parties have agreed that the only matter currently in dispute is the transfer of the entertainment permit.

ordinance.[10] Since the City did not approve the transfer of all of the permits, the MLCC through its Board of Commissioners, comprised of Defendants Betty Pulliam, Phillip Arthurhultz, and Maxine Perry (the "Commissioners") issued a written order denying transfer of the liquor license and all of the related permits. (District Court Opinion, J.A. at 106-07.)

Plaintiffs then filed suit in the Wayne County, Michigan, Circuit Court alleging various violations of their constitutional rights arising from the City's refusal to approve the transfer of the entertainment permit. Filing a writ of mandamus, Plaintiffs sought an order compelling the City to approve the transfer of the entertainment permit to Wojcik and then to Edgar. (J.A. at 107). On cross-motions for summary disposition, the Wayne County Circuit Court determined that an order of mandamus was not the proper form of relief. The court therefore ruled in favor of the City and dismissed the case without prejudice. The court advised Plaintiffs to bring a properly filed action in the Wayne County Circuit Court or, in the alternative, to appeal the Council's decision to the Council itself. The court also denied Plaintiffs' motion for reconsideration. (J.A. at 1418-1432.)

---

[10]A Romulus zoning ordinance provides that a cabaret shall not be located within 500 feet of any multiple-family residential zone, a public or private school, church or other religious facility or institution, a public park, or within 1000 feet of any other adult use. ROMULUS, MI., CODE art. XIV, § 14.02(F) (J. A. at 699, 1713.) This ordinance was later amended to exclude the proscribed activities from areas within 1000 feet of the aforementioned institutions. (J.A. at 1716.) A cabaret is defined "[a]n establishment which permits topless and/or bottomless dancers, go-go dancers, strippers, exotic dancers, male or female impersonators, or similar entertainers." (J.A. at 1714.)

by the City of Romulus and the local law enforcement officials. In fact, both the security agreement between Gampp and Mrs. Wojcik as well as the Wayne County court order indicated that forfeiture of Gampp's assets would be subject to the consent or approval of the MLCC. Mrs. Wojcik is therefore not entitled to the same due process protections she would enjoy if she were seeking to secure the renewal or to prevent the revocation of a permit which she had herself possessed at some point. Without a protected property or liberty interest at stake, Plaintiffs cannot prove a due process violation as a matter of law.

## C.  Impairment of Contracts Claim

Plaintiffs also assert that the City's decision not to transfer the entertainment permit impaired their obligations under at least three contracts in violation of U.S. CONST. art. I § 10, which provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." The Supreme Court has adopted a three-prong test for considering claims of contract impairment. Courts must determine (1) whether a plaintiff has shown "a substantial impairment" of a contractual relationship; (2) assuming substantial impairment is shown, whether the state has a "significant and legitimate public purpose behind the regulation" alleged to impair the contract, such as the "remedying of a broad and general social or economic problem"; and (3) assuming a legitimate public purpose has been identified, whether adjustment of rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the "public purpose" justifying the legislation's adoption. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983); *Linton by Arnold v. Commissioner of Health and Environment, State of Tenn.*, 65 F.3d 508, 517 (6th Cir. 1995). Inasmuch as Plaintiffs cannot satisfy the first prong of this test, their claim cannot succeed.

*Bunn v. Michigan Liquor Control Commission*, 335 N.W.2d 913 (Mich. Ct. App. 1983), the Michigan Court of Appeals found that plaintiffs who had a security interest in liquor licenses were entitled to rudimentary due process. The plaintiffs sold the licenses along with their businesses and therefore retained a reversionary interest in the licenses via the respective security agreements. But in both of those cases the individuals with the security interests were the previous owners of those licenses. Conversely, in the case at bar, while Mrs. Wojcik once owned the liquor license, neither she nor any of the other plaintiffs ever owned the entertainment permit; rather, Gampp alone applied for and obtained the entertainment permit. Thus, Mrs. Wojcik could not have had a reversionary interest in an entertainment permit she never possessed. This fact distinguishes the instant case from both *Barr* and *Bunn*.

Furthermore, Plaintiffs cannot point to any official guarantees or implicit promises made by the City, or even the MLCC, that they would be entitled to a transfer of the entertainment permit. In both the *Barr* and *Bunn* cases, the initial transfer of the licenses was actually approved by the government authorities along with the sale of the establishments. In such a circumstance the party claiming a security interest could legitimately expect to receive back what it once had. *Bunn*, 335 N.W.2d at 917 ("[B]ecause plaintiff's sale of the business, including the underlying contractual arrangements, was approved by the MLCC, his expectation of retransfer, should any problems arise, was legitimate."); *cf. Perry v. Sinderman*, 408 U.S. 593, 601 (1972) (holding that a stated policy or a mutually explicit understanding may support a claim of entitlement to a benefit that would trigger due process protections). However, in the instant case, Plaintiffs are for the first time seeking governmental approval of the transfer of the entertainment permit. Plaintiffs have been or should have been aware at every stage of this litigation that approval of the MLCC was required and that such approval was predicated upon approval

Instead of bringing a properly filed claim or appealing to the Council for reconsideration[11], Plaintiffs filed suit against the City and the MLCC in the United States District Court for the Eastern District of Michigan on April 2, 1996, claiming constitutional violations and a property right in the transfer of the liquor license and the related permits. On March 19, 1997, at Plaintiffs' request, the district court dismissed the MLCC as a party and substituted the Commissioners of the MLCC as individual defendants. (J.A. at 1286). Plaintiffs subsequently filed a second complaint on April 4, 1997, asserting similar constitutional claims pursuant to 42 U.S.C. § 1983. The first and second actions were later consolidated by a *nunc pro tunc* order of the district court. (J.A. at 1435.)

On April 30, 1997, after litigation in the district court was well underway, the Commissioners of the MLCC issued an order transferring the liquor license and some of the requested permits (dance and Sunday sales) to the Trust; but the transfer of the entertainment permit was conditioned upon the resolution of all litigation between the parties.[12]

On October 7, 1997, the district court dismissed the case under the *Rooker-Feldman* doctrine, finding that it lacked subject matter jurisdiction to consider Plaintiffs' claims. *See Rooker v. Fidelity Trusts Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.

---

[11]Plaintiffs argued on motion for reconsideration before the Wayne County Circuit Court that there was no right to appeal from a Romulus City Council decision. (J.A. at 1424.)

[12]The liquor license and all related permits, including the entertainment permit, are being held in escrow pending resolution of this litigation.

1995).[13] Plaintiffs appealed and on April 13, 1999, this Court reversed, finding that the action was not barred by the *Rooker-Feldman* doctrine and remanding for proceedings on the merits. *Wojcik v. City of Romulus*, No. 97-2236, 1999 WL 238662 (6th Cir. Apr. 13, 1999). After remand to the district court, Plaintiffs and Defendants filed cross-motions for summary judgment. On November 9, 1999, the district court granted Defendants' summary judgment motion but denied Plaintiffs' motion. Plaintiffs now appeal from that decision.

## II.

This Court reviews a grant of summary judgment *de novo* using the same legal standard employed by the district court; however, we review the denial of a summary judgment motion only for abuse of discretion. *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1010 (6th Cir. 1999). Not all facts are considered material; a fact is only material if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing cross-motions for summary judgment, we evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248

---

[13]The *Rooker-Feldman* doctrine is "a combination of the abstention and res judicata doctrines, [which] stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *Owens*, 54 F.3d at 274.

of a security interest--and the fact that security interests are generally considered property--Michigan courts have yet to directly confront the question of whether a secured creditor has a constitutionally protected property interest prior to the transfer of a liquor license or a related permit. As parties requesting the transfer of an entertainment permit, Plaintiffs were essentially in the position of new applicants for the entertainment permit and did not have a property interest so as to entitle them to procedural or substantive due process rights in the same way that an existing permit holder might demand.

In *Underground Flint*, the district court recognized that the transfer of a liquor license may still be subject to the approval of a state agency. Of course, this restriction does not completely inhibit the alienability of such licenses. *Underground Flint*, 80 B.R. at 88 ("While it is true that the appropriate state agency must approve the transfer of a liquor license, this does not preclude the trustee from selling the license to a third party contingent upon the approval of the agency.") But this holding stops short of granting a constitutionally protected property interest in that license prior to government approval. We believe that the same principle applies to assignment of entertainment permits. As previously stated, assignment of entertainment permits requires approval of the MLCC. In turn, the MLCC regulations explicitly require prior municipal approval. Therefore, the approval of the MLCC and the City of Romulus were explicit conditions precedent to Plaintiffs' acquiring a constitutionally protected property interest in the entertainment permit. *See, e.g., Bisco's,* 238 N.W.2d at 167 n.3 (recognizing that a state may place reasonable conditions on licenses). Under these facts, Plaintiffs cannot be said to hold a recognized property interest.

Our holding is supported by a close reading of some Michigan cases cited by Plaintiffs. In both *Barr v. Pontiac City Commission*, 282 N.W.2d 348 (Mich. Ct. App. 1979) and

has acquired an interest 'secured by existing rules or understanding[s.']" *Id.* at 167 n.3. In addition, a security interest generally constitutes a constitutionally protected property right and, under Michigan law, individuals may obtain a security interest in a liquor license. *Underground Flint, Inc. v. Viro, Inc.*, 80 B.R. 87, 88 (E.D. Mich. 1982); *cf. In re Terwilliger's Catering Plus, Inc*, 911 F.2d 1168, 1171 (6th Cir. 1990) ("It is undeniable that a liquor license has pecuniary value to its holder since the license enables the holder to sell alcoholic beverages and can be sold for value. Since the state has vested the owner of a liquor license with these beneficial interests, a liquor license constitutes 'property' or 'rights to property' within the meaning of federal tax lien law.").

But in *Shamie v. City of Pontiac*, 620 F.2d 118 (6th Cir. 1980), this Court held that a first time liquor license applicant was not entitled to procedural due process rights under Michigan law.

> [U]nder Michigan law an applicant for a liquor license, as distinguished from a license holder facing renewal or revocation proceedings, does not have a protected interest. The holder of a liquor license may well have a legitimate claim of entitlement to its renewal. One applying for a liquor license has no such claim of entitlement. In the former case there is a 'property' interest; in the latter there is none.

*Shamie v. City of Pontiac*, 443 F. Supp. 679, 683 (E.D. Mich. 1977), *aff'd in part*, 620 F.2d 118. Similarly, first-time applicants for an entertainment permit are likewise not entitled to due process. *Bradfield v. Blesma*, 675 F. Supp. 382 (W.D. Mich. 1987).

In the instant case, Mrs. Wojcik claims to have a recognized property interest in the transfer of an entertainment permit which she has never held. Despite the fact that a liquor license or related permit may be the subject

(6th Cir. 1991); *see also Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On appeal, Plaintiffs contend that the district court erred by failing to find that there was a question of fact as to whether Defendants violated their constitutional rights in contravention of 42 U.S.C. § 1983. In order to assert a successful claim under § 1983, a plaintiff must show that the defendant (1) acted "under color of any statute, ordinance, regulation, custom, or usage, of any state" and (2) that this action deprived the plaintiffs of "any rights, privileges, or immunities secured by the Constitution and the laws" of the United States. Although the district court determined that the Commissioners and the City of Romulus were subject to suit, it ultimately decided that Plaintiffs in the instant case failed to show any deprivation of their constitutional rights.

Plaintiffs allege that Defendants violated their constitutional rights by: (1) impairing contractual obligations in violation of Article I § 10 of the Constitution; (2) depriving Plaintiffs of their property without procedural and substantive due process as guaranteed by the Fifth Amendment; and (3) violating Plaintiffs' rights to freedom of speech protected by the First Amendment.[14] Plaintiffs request that this Court reverse the district court's judgment and enter judgment in their favor ordering Defendants to transfer the entertainment permit from Gampp to Wojcik and then from Wojcik to Edgar. Plaintiffs also seek a judgment allowing them to present testimony to establish damages. In review of the parties' arguments on appeal, we believe that summary judgment in favor of Defendants was proper.

---

[14]In the district court Plaintiffs also asserted a claim under the Takings Clause of the Fifth Amendment. However, they have failed to brief or even mention this issue and have therefore waived it on appeal. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996).

### A.   The MLCC Commissioners

As a threshold matter, we find that the MLCC Commissioners were entitled to summary judgment as a matter of law. Plaintiffs claim that the Commissioners ratified the City's allegedly unconstitutional acts by failing to approve the transfer request. But under Michigan law, the Commissioners had no legal authority to approve the transfer of the entertainment permit. As set forth above, the Michigan Administrative Code limits the Commissioners' discretion to award licenses and permits by requiring the prior approval of the local law enforcement agency and the local legislative body, in this case the Romulus City Council. MICH. ADMIN. CODE r. 436.1407 (1983 Supp.). Moreover, the Commissioners did approve the requests to transfer the entertainment permit subject to the final resolution of this litigation. The Commissioners have therefore done all that they could within the bounds of the law to honor Plaintiffs' requests. Absent some challenge to the requirements of the Michigan Administrative Code, the Commissioners' failure to transfer the entertainment permit cannot be held unconstitutional. We will therefore continue to adjudicate Plaintiffs' claims only as applied to the City of Romulus.

### B.   Procedural and Substantive Due Process Claims

Plaintiffs claim that the City of Romulus violated their substantive due process rights by denying the transfer of the entertainment permit in an arbitrary and capricious manner outside the bounds of applicable law. Plaintiffs further claim that the City violated their procedural due process rights by denying the transfer requests without holding a proper hearing. Plaintiffs allege that prior to denying their requests, the City Council should have held an evidentiary hearing, taken evidence, afforded them an opportunity to confront adverse witnesses, and provided written findings of fact. We disagree.

Procedural and substantive due process claims are examined under a two-part analysis. First, the Court must determine whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened the notions of due process. *Board of Regents v. Roth*, 408 U.S. 564, 570-71; *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997); *Tony L. v. Childers*, 71 F.3d 1182 (6th Cir. 1995). Even though individuals often claim property interests under various provisions of the Constitution, such interests are not created by the Constitution; nor may individuals manufacture a property interest. Unilateral expectations of a property interest are insufficient to trigger due process concerns. Instead, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Parratt v. Taylor*, 451 U.S. 527, 529 n.1 (1981) (quoting *Roth*, 408 U.S. at 577); *see also Verba v. Ohio Casualty Insurance Co.*, 851 F.2d 811, 813 (6th Cir. 1988). Inasmuch as Plaintiffs have not shown that they enjoyed a protected interest in the transfer of the entertainment permit under Michigan law, we need not determine whether they were afforded due process.

Michigan courts have held that the *holder* of a liquor license has a constitutionally protected interest and is therefore entitled to proper proceedings prior to making decisions regarding renewal or revocation. *See Bisco's, Inc. v. Michigan Liquor Control Commission*, 238 N.W.2d 166, 167 (Mich. 1976) (holding that a current holder of a liquor license has a property interest such that an application for renewal cannot be denied without due process protections). Therefore, "once a liquor license has been issued and expenditures have been made in reliance on it, the licensee