NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0379n.06

No. 16-1311

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 27, 2017
DEBORAH S. HUNT, Clerk

JON JON'S, INC.; VICTORIA
CERRITO; MASOUD SESI; NANCY
HAKIM,

    Plaintiffs-Appellants,

v.

CITY OF WARREN,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    GUY, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiffs Jon Jon's, Inc., Victoria Cerrito, Masoud Sesi, and Nancy Hakim appeal from the district court's order granting Defendant City of Warren's motion for summary judgment as to Plaintiffs' 42 U.S.C. § 1983 constitutional claims and remanding the supplemental state law claims to the Macomb County Circuit Court. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment.

BACKGROUND

This action arises out of Defendant's denial of the transfer of a liquor license involving the now defunct Jon Jon's, an adult entertainment establishment featuring topless dancing in Warren, Michigan. The gravamen of the appeal is that Defendant, in denying the transfer, discriminated against Sesi and Hakim because they are Arab American.

**Factual Background**

Cerrito had owned Jon Jon's for 25 years. In 1986, Defendant changed its zoning ordinances to address the secondary effects of sexually-oriented businesses. The new ordinance would have prevented Jon Jon's from operating at its current location because it was within 750 feet of a residential area; however, Jon Jon's was granted non-conforming use status, and so was allowed to continue operating its business there. In order to retain its non-conforming use status, Jon Jon's was prohibited from making improvements constituting more than 30 percent of its listed value. The reason for this restriction was to phase out over time the non-conforming use status.

In the spring of 2008, Cerrito planned to sell Jon Jon's in its entirety to Sesi because she could not afford to undertake needed renovations. Cerrito and Sesi entered into a purchase agreement for $1.3 million. Sesi paid Cerrito about $500,000 up front, of which $100,000 went to purchasing a 9% stake in Jon Jon's. Cerrito transferred 9% of the stock to Sesi on December 1, 2008. Cerrito did not need approval from the Warren City Council ("City Council"), the Warren Police Department, or the Michigan Liquor Control Commission ("MLCC") because she transferred less than 10% of the Jon Jon's stock. *See* Mich. Comp. Laws §§ 436.1501(2), 436.1529(1). Cerrito then resigned, effective immediately. Sesi was to pay the remainder of the $1.3 million after the transfer of the remaining 91% of the Jon Jon's stock was approved by the above-named authorities.

In January 2009, Sesi, through his counsel, Cecil St. Pierre, obtained a variance to install a walk-in cooler and to raise the roof height. In April 2009, Cerrito sought to transfer the remaining 91% of Jon Jon's stock to Sesi. In August 2009, the Warren Police Commissioner recommended against the transfer application based on the long history of liquor code violations

at Cheetah's, a strip club in Detroit that Sesi owned. Before the City Council considered and voted on the transfer application, Sesi withdrew his request because he believed that his efforts to obtain City Council approval would be futile given his history.

Sesi, through his company, BFC Management, had purchased Cheetah's in 2002. From 2005 to 2007, Cheetah's employees were charged with numerous liquor license violations, including allowing dancers to touch patrons' genitals and selling alcohol to minors. Cheetah's also garnered national attention prior to 2009 based on human trafficking that occurred at the club. Sesi was never indicted on the charges of human trafficking.

As soon as Sesi took over Cheetah's in 2002, he hired his nephew Lahkman (Luke) Al-Hakim to work at the club. At some point after Sesi purchased Cheetah's, Al-Hakim purchased the land on which Cheetah's sits. In the summer of 2009, Al-Hakim purchased the land on which Jon Jon's sits.

One month after Sesi withdrew his transfer request for Jon Jon's, Sesi sold his interest to Hakim, his niece and Al-Hakim's sister, for $5,000, which was only a fraction of what he had paid Cerrito less than ten months earlier. The same day Sesi sold his interest in Jon Jon's to Hakim, Hakim entered into a stock purchase agreement to buy Cerrito's 91% interest in Jon Jon's for $650,000, subject to the approval of the City Council, Warren Police Department, and the MLCC. In January 2010, Hakim applied to the City Council for approval of the stock sale transfer of Cerrito's interest in Jon Jon's.

During its April 27, 2010 meeting, the City Council discussed Hakim's stock transfer application and took public comments. At the meeting, Hakim's interests were represented by attorney Cecil St. Pierre, who she did not speak to prior to the hearing and who was paid by her brother, Al-Hakim. Councilmember Mark Liss expressed concerns that Sesi would be involved

in Jon Jon's operations, and that the $800,000 in improvements anticipated by Jon Jon's would destroy the strip club's non-conforming use status. The President of Central Homeowners of Warren ("CHOW") also expressed concern that Sesi would be involved in the operation of Jon Jon's. St. Pierre stated that Sesi would not run Jon Jon's but its current manager, Kelly Sanders, who had run the business for 20 years, would continue to do so. Hakim later testified at her deposition that her brother Al-Hakim would operate Jon Jon's and that she had never met and did not know Sanders.

The City Council voted 5-4 to deny the transfer application. The City Council did not issue a formal written decision outlining its reasons for the denial, but the meeting minutes set forth Liss' objections and the concerns that other councilmembers and community members raised at the hearing. On August 18, 2010, the City's Chief Zoning Inspector informed Jon Jon's that it had lost is non-conforming use status due to unapproved demolition. After Sesi obtained the variance in 2009 to add a new walk-in cooler and raise the roof height, it was discovered that Jon Jon's had been gutted, and what was left were only a few walls and a concrete slab.

Jon Jon's appealed the Chief Zoning Inspector's decision to the Zoning Board of Appeals ("ZBA"). The ZBA affirmed, and the Macomb County Circuit Court affirmed the ZBA's decision that Jon Jon's had lost its status as a non-conforming use.

**Procedural Background**

On June 1, 2010, Plaintiffs commenced this action against Defendant and Mark Liss challenging Defendant's and Mark Liss's actions on state and federal grounds. On state law grounds, Plaintiffs challenge the denial of the transfer application and seek a writ of mandamus ordering Defendant to transfer the liquor license to Hakim (Counts I and II). On federal grounds, Plaintiffs brought suit under § 1983, claiming Defendant and Liss violated their substantive due

process rights, violated their rights to freedom of speech and expression, and discriminated against them on the basis of race (Counts IV through IX). On November 16, 2010, the parties filed a stipulation removing Liss from the caption of the complaint. On May 5, 2012, Defendant filed its first motion for summary judgment. On August 31, 2012, the district court granted Defendant's first motion for summary judgment. The district court held that Plaintiffs' claims were barred by res judicata because the Macomb County Circuit Court adjudicated the issue of whether Jon Jon's properly lost its nonconforming use status. Plaintiffs subsequently appealed the district court's order to this Court.

On August 29, 2013, this Court issued an opinion reversing and remanding the case because res judicata did not bar all of Plaintiffs' claims since Macomb County Circuit Court "construed Plaintiffs' case solely as an appeal from the [Zoning Board of Appeals'] decision and did not acknowledge or consider Plaintiffs' constitutional claims against the City." *Jon Jon's, Inc., et al. v. City of Warren*, 534 F. App'x 541, 541 (6th Cir. 2013). This Court explained that the Macomb County Circuit Court did not adjudicate Plaintiffs' constitutional claims, and therefore those claims were not barred by res judicata. *Id.* at 543–45.

On September 30, 2013, the district court reopened the case. On October 13, 2015, Defendant filed its second motion for summary judgment. On that same day, Defendant also filed a motion for leave to file excess pages. On October 15, 2015, the district court granted Defendant's motion for leave to file excess pages. On February 16, 2016, the district court granted Defendant's second motion for summary judgment as to Plaintiffs' federal constitutional claims and remanded the supplemental state law claims to the Macomb County Circuit Court. Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs argue that the district court erred in granting summary judgment in favor of Defendant because: (1) Defendant did not file a brief in support of its motion for summary judgment; (2) the district court considered evidence outside the scope of the City Council's April 27, 2010 hearing, which Plaintiffs refer to as "parol evidence"; (3) Defendant denied them equal protection on the basis of race; (4) Defendant denied them their substantive due process rights by not following the procedures set out in City ordinances enacted after the April 2010 meeting; (5) Defendant violated their right to freedom of expression by enacting such ordinances; and (6) the district court erroneously dismissed Mark Liss as a defendant.

### 1. Standard of Review

"This Court reviews a grant of summary judgment *de novo* using the same legal standard employed by the district court." *Wojcik v. City of Romulus*, 257 F.3d 600, 608 (6th Cir. 2001). "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). A fact is only material if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views all facts and inferences in the light most favorable to the nonmoving party. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## 2. Analysis

### A. Failure to Submit Brief

Plaintiffs' first argument is that the district court erred in granting summary judgment because Defendant failed "to submit a brief in support." (Pls.' Br. 14.) Plaintiffs contend that Defendant "filed its motion for summary judgment" and that the "motion did not include a brief in support of the motion, which is required under Eastern District of Michigan Local Rule 7.1(d)(1)(A)." (*Id.*)

When Defendant moved for summary judgment, it submitted a brief that exceeded the standard 25-page limit set out in Eastern District of Michigan Local Rule 7.1(d)(3)(A). Two days after Defendant filed its motion for summary judgment and motion for leave to file excess pages, the district court granted Defendant's motion for leave to file excess pages in a text-only order. On that same day, the district court notified the parties that it would determine the motion for summary judgment without oral argument, stating that the motion for summary judgment "ha[s] been filed." (R. 93, Notice of Determination Without Oral Argument, Page ID # 2720.)

The district court's decision that Defendant properly filed its brief is reviewed for an abuse of discretion because the "interpretation and application of local rules and local practice. . . . are matters within the district court's discretion." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 714 (6th Cir. 2006). Under Eastern District of Michigan Local Rule 7.1(d)(1)(A), "[u]nless the court permits otherwise, each motion and response to a motion must be accompanied by a single brief" and "[t]he brief may be separate from or may be contained within the motion or response." Plaintiffs' apparent contention is that Defendant never filed the brief on its own once the district court granted Defendant's motion for leave to file excess pages. Defendant noted in a footnote in its reply brief that it confirmed with district court staff that it did

not need to re-file the brief as a stand-alone docket entry. Moreover, Plaintiffs responded to the brief they contend was never filed. For the aforementioned reasons, the district court did not abuse its discretion in not requiring Defendant to file a stand-alone brief.

### B. Parol Evidence Rule

Plaintiffs' second contention concerns the scope of the evidence that the district court considered in resolving their constitutional claims. Plaintiffs argue that the only evidence we may consider when reviewing whether there was racial animus in Defendant's decision to deny Hakim's application is the City Council's minutes. Plaintiffs' argument fails to persuade us because it is not supported by our precedent or the rules of evidence, nor is it even reasonable as a practical matter.

Plaintiffs specifically contend that the district court erred in deciding the race-discrimination claim when it considered evidence that was not contained in the official minutes of the April 2010 meeting because "[u]nder Michigan law, a public board speaks through its minutes and resolutions only." (Pls.' Br. 24 (citations omitted).) Plaintiffs thus argue that the district court erred when it (1) concluded that the parol evidence doctrine does not apply to constitutional claims, only contractual claims, and (2) allowed Defendant "to use parol evidence to justify the City's denial of the Hakim application" because this doctrine applies "to all cases where a municipal body is required to keep records of their official meetings." (Pls.' Br. 25.)

There are numerous reasons why Plaintiffs' argument fails. First, Plaintiffs fail to cite to any precedent that supports their proposition. Plaintiffs first cite to *Palladium Publishing Co. v. River Valley School District*, 321 N.W.2d 705, 707 (Mich. App. 1982), not for any legal proposition but for the fact that *Palladium* cites to *Tavener v. Elk Rapids Rural Agricultural School District*, 67 N.W.2d 136 (Mich. 1954). Both cases are immaterial to our analysis of this

issue. In *Palladium*, the Michigan Court of Appeals held that "in order for the Board of Education to act upon the suspension of a student, the minutes of the Board of Education meeting must contain the student's name. The facts cannot be hidden by using the student's number." 321 N.W.2d at 706. *Palladium* does not support the claim that only official meeting minutes may be introduced to prove or refute a discrimination claim against a municipal government, and thus fails to support Plaintiffs' argument.

Likewise, *Tavener* is also irrelevant to our analysis. Plaintiffs cite *Tavener* for the general proposition that records kept by municipal governments must not be supplemented by parol evidence because "'the true official history of their acts would perish with the living witnesses, or fluctuate with their conflicting memories.'" 67 N.W.2d at 139 (quoting *Stevenson v. Bay City*, 26 Mich. 44, 45 (1872)). But Plaintiffs do not explain how or why *Tavener* applies in this § 1983 case. In *Tavener*, the Michigan Supreme Court held that a school board member could not contradict the board's resolutions and minutes concerning the estimated cost of a construction project by testifying that a resolution was passed "with reservations." *Id.* at 139–40. However, the court took into consideration testimony and correspondence regarding the board's deliberations that did not contradict the board's resolutions and minutes. 67 N.W.2d at 138–39. In this case, Defendant relies on exactly this sort of complementary evidence.

In any event, the evidence contained in the April 2010 City Council minutes provides legitimate and non-discriminatory reasons for the denial of the transfer application. (*See* R. 91-13, April 2010 Minutes, Page ID # 2627 (noting Hakim's lack of experience to run a high-risk business, i.e., liquor-licensed strip club); Page ID # 2625 (Hakim's counsel, who was also Sesi's counsel, admitted that Sesi had numerous violations and his application had not been approved by the Warren Police Department); Page ID # 2626 (president of neighborhood group expressing

concern over Sesi's past with Cheetahs and possible involvement with Jon Jon's); Page ID # 2626 (Hakim's counsel admitting Hakim's familial relation to Sesi and explaining that Hakim's mother was Sesi's step sister); Page ID # 2627 (Liss noting that Sesi had been part owner and managing partner of Jon Jon's for years, and that Jon Jon's was owned by Warren Property Investments, which was owned by Hakim's brother); Page ID # 2627 (Liss explaining that because it was next to homes, Jon Jon's did not conform to the zoning ordinance, that the $800,000 investment would involve "a major structural change," and would not comply with the zoning ordinance).)

Accordingly, we hold that the district court did not err in considering all of the relevant evidence presented when it dismissed Plaintiffs' § 1983 claims.

### C.  Race Discrimination

Next, we turn to Plaintiffs' race discrimination claim brought pursuant to the Equal Protection Clause of the Fourteenth Amendment.  In order to state a claim for race discrimination under the Equal Protection Clause, Plaintiffs must prove "racially discriminatory intent or purpose."  *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (internal citations omitted).  The evidence presented may be direct or circumstantial, as long as it demonstrates "a clear pattern" of government action that is "unexplainable on grounds other than race."  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).  The district court held that Plaintiffs failed to meet their burden.  We agree.

Plaintiffs failed to put forth any evidence that demonstrates that the City Council opposed the transfer of the liquor license based on Sesi and Hakim's race.  First, Plaintiffs rely primarily on Sesi's and Hakim's deposition testimony that they "felt" the City Council denied the transfer based on their race.  As the district court pointed out, this *ipse dixit* is "nothing more than rank

speculation." (R. 102, Order Granting Mot. for Summ. J., Page ID # 3032.) Second, Plaintiffs contend that no other transfer applications were denied in 2009 and 2010, and that the only difference between the applicants whose applications were granted and Hakim is that Hakim is Arab American. Plaintiffs reference one instance where a liquor license transfer application was approved by the City Council, but Plaintiffs fail to provide the race of that applicant. Thus, this alleged comparison provides no support for their argument.

Third, Plaintiffs argue that the City Council relied on evidence that was not part of the official minutes of the April 27, 2010, meeting to justify the denial of the transfer application. (Pls.' Br. 24.) Plaintiffs contend that the district court "misunderstood, and therefore misapplied, Michigan law" because "this doctrine does not apply only to matters of contract interpretation, but to all cases where a municipal body is required to keep records of their official meetings." (*Id.* at 24−25.) We do not agree with Plaintiffs' contention. As discussed above, Plaintiffs provide no authority supporting their position. In any event, "the meeting minutes and Liss' deposition testimony provide non-discriminatory and legitimate reasons for the denial." (R. 102 at 3032.)

Fourth, Plaintiffs complain that the City Council, in making its decision in 2010, did not comply with a City ordinance enacted in 2013, which requires the Council to give reasons for a decision approving or denying a transfer application. This 2013 ordinance is irrelevant to our analysis because it was not in existence at the time the transfer application was denied in April 2010, and thus has no bearing on the issue of whether the City Council racially discriminated against Plaintiffs.

Fifth, Plaintiffs rely on census statistics to argue that no Arab Americans resided in the City of Warren in 2010, making racial animus the likely reason for the City Council's decision.

We are not persuaded. This data, without more, does not demonstrate "a clear pattern" of government action that is "unexplainable on grounds other than race." *Village of Arlington Heights*, 429 U.S. at 266.

Sixth, Plaintiffs point to three prior discrimination cases where the City was found liable for race, disability, and height discrimination to argue that the City racially discriminated against them in this case. These prior and unrelated acts of discrimination do not suggest racial animus in this case. For one, the disability and height cases are entirely irrelevant to the race discrimination claim at issue here. Second, the prior race discrimination case stemmed from the City's municipal recruitment practices in 1998, and involved different governmental actors, a different suspect class, and different factual allegations.

Finally, Plaintiffs rely on postings and letters by Liss to support their allegation that he was on a mission to get their liquor license transfer application denied because Hakim and Sesi are Arab Americans. As with the arguments discussed above, this final argument falls short of persuading us. Liss, in his letters and web postings, does not mention or refer to Plaintiffs' race. More importantly, Liss' writings reveal his concerns that Jon Jon's would be turned into the next Cheetah's due to the substantial likelihood that Sesi and/or Al-Hakim would become involved in managing Jon Jon's.

Therefore, we conclude that the district court did not err in granting summary judgment in favor of Defendant on Plaintiffs' race discrimination claim because Plaintiffs have failed to raise a genuine issue of material fact that Defendant denied Hakim's transfer application because of her race.

**D. Substantive Due Process**

Plaintiffs further allege that Defendant violated their substantive due process rights by way of two City ordinances enacted after the April 27, 2010, meeting. Before reaching the merits of Plaintiffs' claim, we must first consider what interest is at stake, if any.

"[S]ubstantive due process claims are examined under a two-part analysis. First, the Court must determine whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened the notions of due process." *Wojcik*, 257 F.3d at 609 (internal citations omitted). "Unilateral expectations of a property interest are insufficient to trigger due process concerns.'" *Id.* "Michigan courts have held that the *holder* of a liquor license has a constitutionally protected interest and is therefore entitled to proper proceedings prior to making decisions regarding renewal or revocation." *Id.* at 609−10 (citing *Bisco's, Inc. v. Mich. Liquor Control Comm'n*, 238 N.W.2d 166, 167 (Mich. 1976) (holding that a current holder of a liquor license has a property interest such that an application for renewal cannot be denied without due process protections)).

Plaintiffs argue that Hakim has a recognized property interest in the liquor license that was the subject of the transfer application. We disagree. In *Wojcik*, we stated that, "[a]s parties requesting the transfer of an entertainment permit, Plaintiffs were essentially in the position of new applicants for the entertainment permit and did not have a property interest so as to entitle them to procedural or substantive due process rights in the same way that an existing permit holder might demand." 257 F.3d at 610. Similar to the plaintiffs in *Wojcik*, Hakim does not have a recognized property interest in the liquor license because she was a new applicant with no existing ownership of the liquor license. As to Cerrito, the holder of a liquor license is entitled to

due process for "decisions regarding renewal or revocation." *Wojcik*, 257 F.3d at 610 (citation omitted). However, there is no recognized property interest in the ability to transfer a liquor license, because limiting transferability "does not completely inhibit the alienability of such licenses." *Id.* at 610. Plaintiffs cannot claim a due process violation as a matter of law without a protected property or liberty interest at stake. Moreover, even if there were a recognized property interest at stake, the bases for Plaintiffs' substantive due process argument are two City ordinances that were enacted after the decision to deny the transfer application was made in April 2010. Thus, Plaintiffs' substantive due process claim would have failed in any event.

### E. First Amendment

Plaintiffs also argue that the City ordinance enacted in 2013, which prohibits topless dancing at establishments that serve alcohol, is not content neutral, and thus violates their First Amendment right to freedom of expression. Whatever the merits of that assertion, the district court correctly pointed out that "[t]he constitutionality of the 2013 liquor ordinance . . . is not properly before this court" and "cannot form any basis for plaintiffs' First Amendment claim" because "Plaintiffs' transfer application was denied in 2010, their Complaint was filed in 2010, and they have not sought to amend the Complaint at any point over the past six years that this litigation has been pending." (R. 102 at 3031.)

### F. Mark Liss Removed From Caption

Plaintiffs lastly argue that the district court erred in finding that Liss was properly dismissed as a defendant because they never stipulated to a dismissal of Liss, and our earlier opinion reversing summary judgment for Defendant also reversed the dismissal of Liss. We do not find Plaintiffs' final argument persuasive. The record clearly demonstrates that the parties stipulated early on in this case to remove Liss from the case caption. Moreover, Plaintiffs failed

to appeal or move for reconsideration of the district court's first summary judgment order explicitly acknowledging Liss' dismissal. (R. 66, 2012 Order Granting Mot. for Summ. J., Page ID # 2061 ("The complaint originally identified two Defendants; namely, the City and Mark Liss, a member of its City Council. However, pursuant to the parties' stipulation, the Court entered an order on November 16, 2010 which dismissed Liss as a party to this case.").)

As the district court stated, "[i]f plaintiffs took issue with Liss' dismissal, the time to do so was in a motion for reconsideration or on appeal. Having done neither, Liss was properly dismissed, and there is no basis for reinstating those claims now, some five years later." (R. 102 at 3020.) We agree, and hold that Liss was properly dismissed.

### 3. Summary

We hold that the district court did not err in granting summary judgment in favor of Defendant because: (1) Defendant filed a brief in support of its motion for summary judgment; (2) Michigan's parol evidence rule does not preclude the evidence presented by Defendant with respect to the constitutional claims asserted in this case; (3) Plaintiffs provide no evidence that the decision to deny the liquor license transfer application was motivated by race, other than their self-serving deposition testimony; (4) the two ordinances Plaintiffs reference are irrelevant to this case since they were enacted after the City Council denied Hakim's transfer application; and (5) Liss was properly dismissed as a defendant.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Defendant.