Andrew Francis KLIMIK,
Plaintiff–Appellant,

v.

KENT COUNTY SHERIFF'S
DEPARTMENT, et al.,
Defendants–Appellees.

No. 02–1774.

United States Court of Appeals,
Sixth Circuit.

Jan. 30, 2004.

Christine A. Yared, Grand Rapids, MI, for Plaintiff–Appellant.

Paul J. Greenwald, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Defendants–Appellees.

Before BOGGS, Chief Judge; GIBBONS, Circuit Judge; and GWIN, District Judge.*

GIBBONS, Circuit Judge.

Plaintiff-appellant Andrew Klimik contacted defendant-appellee Kent County Sheriff's Department ("Department") on

* The Honorable James Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

November 19, 1999, to complain about a theft, of his personal property. The Department declined to send a patrol car to Klimik's residence to investigate the complaint because Klimik's address had been "red-flagged" by the Department as entitled only to emergency service. Klimik filed suit against the Department and then Kent County Sheriff James R. Dougan under 42 U.S.C. § 1983, alleging that defendants violated Klimik's Fourteenth Amendment rights to equal protection and due process by red-flagging his address and denying him non-emergency police services. The district court granted defendants' motion for summary judgment. For the following reasons, we affirm the judgment of the district court.

## I.

Klimik resides in Alto, Michigan, in a home located on Campbell Lake. His home is situated on a private drive along with a number of other residences. Over the course of twenty years, Klimik frequently has complained to the Department about Lieutenant Larry Flynn and his family, who are Klimik's neighbors.[1] According to Klimik, he has been bothered by Flynn, the Department's former road patrol supervisor, and Flynn's family since they moved next door to him over thirty years ago. Klimik claims that they have thrown wild parties, that Flynn's children have vandalized his property, that Flynn's grandchild was involved in drugs, and that Lieutenant Flynn threatened to kill him on one occasion. The Department responded to Klimik's various complaints by dispatching road patrol deputies, the very officers Lieutenant Flynn supervised, to Klimik's residence to investigate. Klimik, at times, was displeased with the Department's response to his complaints and believed that the responding officers often were biased

in their investigations in favor of Flynn and Flynn's family. The Department claims that Klimik frequently complained about such a bias.

In light of Klimik's complaints, the Department ultimately decided to "housewatch," or "red-flag." Klimik's residence in 1997. According to Department policy, a red flag is a designation attached to an address in the Department's dispatch computer system that notifies a dispatcher answering a call from that address that complaints arising from the residence are to receive a specialized response. The red flag attached to Klimik's address provided the following instruction:

> If Andrew Klimek [sic] calls for NON–EMERGENCY complaint, refer subject to either Rockford [Michigan State Police] or Ionia [Michigan State Police] due to adversarial relationship with this department. Mr. Klimek [sic] is the neighbor of retired Lt. Larry Flynn, [Kent County Sheriff's Department]. Mr. Klimek [sic] has always complained about matters involving Flynn—which have all been of no substance. ALWAYS SEND ASSISTANCE TO EMERGENCY CALLS AT THIS HOME.

The Department determined that, in addition to Klimik's allegations of bias, the red flag was necessary because of the potential conflict of interest created by Klimik's non-emergency complaints, which generally involved Flynn, a former Department officer whose responsibilities once included supervising the deputies who investigated complaints. Rather than subject its officers to such a conflict of interest and rather than leave itself open to Klimik's charges of bias, the Department decided it would be better for both the Department and Klimik if the Michigan State Police

1. Lieutenant Flynn died prior to the com-    mencement of this case.

handled all of Klimik's non-emergency complaints.[2]

At about 8:30 a.m. on November 19, 1999, Klimik noticed that flower pots were missing from his front yard. At 9:00 a.m., he contacted the Department to report a theft of the flower pots. Klimik did not suggest that the situation presented an emergency. The dispatcher told Klimik that a patrol officer would be sent to his residence to investigate his complaint. As of 11:00 a.m., no patrol officer had arrived. Klimik then called the Department again and notified the dispatcher that the promised patrol officer had yet to arrive. The dispatcher notified Klimik that his address had been red-flagged and that his request for non-emergency service was being denied. According to Klimik, the dispatcher mentioned that the red flag had been ordered by Sheriff Dougan, but the dispatcher did not explain the basis for the designation. After being denied service by the Department, Klimik contacted the Michigan State Police to report the theft. The State Police did not respond to Klimik's call that day.

Klimik waited until April 3, 2000, to contact the Department again to report the previous theft of his flower pots on November 19, 1999. He was determined to obtain a police report regarding the theft so that he could file the report with an insurance claim. The dispatcher notified Klimik that his address had been red-flagged and that the Department would not provide him with non-emergency service. According to Klimik, the dispatcher did not notify him of the reasons for the red flag. The dispatcher then transferred Klimik to the Michigan State Police. The

State Police responded to Klimik's call that day by sending a patrol officer to his address. The state trooper provided Klimik with a police report chronicling Klimik's complaint of a theft.

On April 30, 2001, Klimik filed suit against defendants in the United States District Court for the Western District of Michigan under 42 U.S.C. § 1983. Klimik alleged that defendants violated his Fourteenth Amendment rights to due process and equal protection by red-flagging his address and denying him non-emergency police services. Defendants filed a motion for summary judgment on March 26, 2002. In addition to addressing Klimik's substantive claims, defendants asked the court to dismiss the complaint with regard to the Department on the ground that the Department is not a legally cognizable entity subject to suit because it is merely a political subdivision of Kent County. Defendants asserted that, instead of the Department, the proper defendant would be either Kent County or the current sheriff of Kent County. Lawrence A. Stelma.

The district court granted defendants' motion for summary judgment on May 15, 2002. The court found persuasive the argument that the Department is not a legally cognizable entity subject to suit. However, the court assumed Klimik would properly amend his complaint to name Sheriff Stelma as a defendant and proceeded in light of this assumption.[3] The court then addressed Klimik's equal protection claim. Because Klimik did not allege that he was a member of a certain class or group, the court proceeded on the assumption that his equal protection claim was premised on a "class of one" theory.

---

**2.** At the time, the Department and the Michigan State Police shared jurisdiction over criminal complaints originating in Alto.

**3.** The district court never formally dismissed the Department from the suit. Hence, the Department is still a party to the litigation and is currently before this court on Klimik's appeal.

The court determined that Klimik presented no equal protection claim under this theory because he could not demonstrate that the decision to red-flag his address or to deny him non-emergency service lacked a rational basis. Finally, the court addressed Klimik's due process claims. The court construed Klimik's complaint as presenting both a procedural and a substantive due process claim. With regards to Klimik's procedural due process claim, the court determined that Klimik had not property or liberty interest in non-emergency police services and, therefore, was not entitled either to notice or a hearing prior to defendants' decision to deny him such services. The court then found that Klimik's substantive due process rights were not violated because defendants' actions did not shock the conscience. Klimik filed a timely appeal on June 13, 2002. In addition to contesting the district court's grant of summary judgment to defendants. Klimik also asserts on appeal that he should be allowed to amend his complaint.

## II.

A district court's grant of summary judgment is reviewed *de novo*. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir.2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party requesting summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 466 (6th Cir.2003). If the moving party makes this showing, the burden shifts to the non-moving party to demonstrate the presence of a genuine issue of material fact requiring trial. *Id.* The non-

moving party must present "more than a mere scintilla of evidence" of a factual dispute to meet this burden. *Little,* 265 F.3d at 361. However, when reviewing a motion for summary judgment the court views all the evidence in the light most favorable to the non-moving party. *Nguyen v. City of Cleveland,* 229 F.3d 559, 562 (6th Cir.2000). Ultimately, the court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996) (internal quotation marks omitted).

### A. Equal Protection

The district court found that Klimik could not prevail on his equal protection claim under a "class of one" theory because he could not show that there was no rational basis for defendants' actions. On appeal, Klimik asserts that defendants' actions were arbitrary. Klimik also asserts, in support of his "class of one" equal protection claim, that he alleged facts sufficient to demonstrate that defendants' actions were motivated by animus.

The Fourteenth Amendment to the United States Constitution states, in part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. § 1. The Supreme Court has long recognized that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)

(citations and internal quotations omitted). Though equal protection claims generally involve members of a certain class alleging that they are being treated disparately from members of another class, *see. e.g., Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993), the Supreme Court has also recognized that the Equal Protection Clause gives rise to a cause of action for a "class of one." *Olech,* 528 U.S. at 564, 120 S.Ct. 1073. To present a claim as a "class of one," a plaintiff must demonstrate "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

Under *Olech,* a "class of one" plaintiff may demonstrate that a government action lacks a rational basis in one of two ways. A "class of one" plaintiff can "negative every conceivable basis which might support" the government action. *Bower v. Vill. of Mount Sterling,* 44 Fed. Appx. 670, 677 (6th Cir.2002) (quoting *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). Alternatively, a "class of one" plaintiff can demonstrate that the challenged government action was motivated by animus or ill-will. *Bower,* 44 Fed. Appx. at 678; *cf. Romer v. Evans,* 517 U.S. 620, 634–35, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (holding that a state constitutional amendment lacked a rational basis in violation of the equal protection clause because it was only explainable by an animus toward the class affected); *Schroeder v. Hamilton Sch. Dist.,* 282 F.3d 946, 957 (7th Cir.2002) (Posner, J., concurring) (noting that, under equal protection rationality review, a plaintiff can demonstrate that a government action lacks a rational basis by demonstrating that the action was motivated by animus or by demonstrating that the action bears no rational relation to legitimate state policy).

■ Even assuming Klimik can demonstrate that he was intentionally treated differently from others similarly situated, his equal protection claim fails because he cannot demonstrate that the challenged government actions lack a rational basis First, Klimik cannot negative every conceivable basis for defendants' actions, much less the justifications actually proffered by defendants. Defendants offer two justifications for the decisions to red-flag Klimik's address and to deny Klimik non-emergency police services. One is Klimik's perception that the Department and its officers were biased in their investigation of Klimik's complaints. The other is the conflict of interest that arose when patrol deputies were asked to investigate Klimik's complaints, which generally involved their former supervisor and his family.[4]

In response to defendants' justifications. Klimik asserts that Flynn died prior to November 19, 1999, the date of the complaint at issue. According to Klimik, if Flynn had already died, the possibility of bias and a conflict of interest no longer existed, and the justifications could not support the Department's refusal to address his complaint. It is unclear exactly when Flynn died. In a deposition, Edward Westhouse, a lieutenant with the Department in November 1999, testified that Flynn died either in 1999 or January of 2000. However, regardless of whether Flynn was deceased at the time of Klimik's

---

4. Klimik makes much of the justification included in the red flag itself that Klimik's complaints have always been of no substance. He contends he can present evidence that at least some of his complaints were legitimate, which would negate this justification. On summary judgment, however, Klimik must bring his evidence forward, and his failure to do so merits affirmance.

complaint in November 1999, defendants' justifications provide conceivable bases for the decision not to answer that complaint. Even if Flynn was deceased, the Department could have been justifiably concerned that Klimik would question the impartiality of officers sent to investigate his complaints. Indeed, Klimik himself admitted in his deposition that he had grown to expect biased and unfair treatment from sheriffs' officers who responded to his calls. As for the problem of a conflict of interest, the potential existed even after Flynn's death that sheriff's officers would feel a conflict when asked to investigate complaints regarding Flynn's family. In fact, Lieutenant Westhouse testified to the great difficulty felt by sheriff's officers who addressed Klimik's complaints.

With respect to the decision to red-flag Klimik's address in the first instance, by the very terms of the red flag itself it appears that Flynn was retired at the time. Even though Flynn was retired, the Department could have been justifiably concerned that its officers would experience a conflict of interest when investigating Klimik's non-emergency complaints and that Klimik would question the impartiality of the investigating officers, especially considering that his complaints generally involved Flynn and his family. Hence, defendants' justifications also provide conceivable bases for the initial decision to red-flag Klimik's address.

In sum, defendants' justifications provide conceivable bases for their decisions to red-flag Klimik's address and to deny Klimik non-emergency service in favor of allowing the Michigan State Police to handle Klimik's complaints. Instead of providing service to someone who might question the impartiality of that service and instead of potentially placing its officers in situations that could create a conflict of interest, the Department rationally concluded that it would be best for another law enforcement agency to address Klimik's non-emergency complaints. Klimik therefore fails to negative every conceivable basis for defendants' actions.

Second, Klimik does not allege any facts or produce any evidence suggesting that defendants' actions were motived by animus or ill will. To demonstrate animus or ill will under *Olech*, a plaintiff must prove that the challenged government actions were motivated by personal malice unrelated to the defendant's official duties. *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir.2000); *see also Bower*, 44 Fed.Appx. at 678 (finding that plaintiff presented an *Olech* claim when he alleged that a mayor manipulated police hiring procedures to deny plaintiff a full-time job because of the plaintiff's family ties); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.2001) (stating that plaintiff can present a "class of one" claim by showing "that the state government took an action that 'was a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective' ") (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995)); *Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir.2001) (stating same and quoting *Esmail*). Because Klimik does not allege any facts or produce evidence suggesting that defendants harbored any personal animus toward him, he does not raise a genuine issue of material fact concerning animus in support of his *Olech* claim.

Klimik cannot negative the conceivable bases offered by defendants for their actions. Nor does he raise a genuine issue of material fact as to whether defendants' actions were motivated by personal animus. As a result, defendants must prevail on Klimik's equal protection claim as a matter of law. Therefore, we affirm the

district court's grant of summary judgment to defendants on that claim.

### B. Due Process

Klimik presented both a procedural and a substantive due process claim to the district court. With regard to Klimik's procedural due process claim, the district court determined that Klimik did not hold a property or liberty interest in non-emergency police services and thus was not entitled to process prior to being denied those services. With regard to his substantive due process claim, the court determined that defendants' actions did not shock the conscience and, therefore, did not violate Klimik's substantive due process rights. Klimik argues that these determinations were in error. We disagree.

The Fourteenth Amendment provides, in part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause contains both a procedural and a substantive component. When a person holds a property or a liberty interest, procedural due process generally requires that the state provide that person with notice and an opportunity to be heard before depriving the person of that interest. *See, e.g., Thompson v. Ashe,* 250 F.3d 399, 407 (6th Cir.2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). To present a procedural due process claim under § 1983, part of the plaintiff's burden is to "show that the defendant acted under the color of state law to deprive the plaintiff of a definite liberty or property interest." *Mich. Paytel Joint Venture v. City of Detroit,* 287 F.3d 527, 539 (6th Cir.2002). Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or the lack thereof, violated his right to due process. *Hamilton v. Myers,* 281 F.3d 520, 529 (6th Cir.2002).

To demonstrate possession of a protected property interest, a plaintiff must assert "more than abstract desires for or attractions to a benefit." *Id.* Rather, a plaintiff must show that he has a "legitimate claim of entitlement" to the benefit. *Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Protected property interests do not stem from the Constitution but, instead, derive from independent sources, such as state law. *Hamilton,* 281 F.3d at 529. Liberty interests, on the other hand, may derive from state law or from the due process clause itself. *Tony L. v. Childers,* 71 F.3d 1182, 1185 (6th Cir.1995). The liberty interests established by the due process clause are " 'those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' " *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1062 (6th Cir.1998) (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). Such interests include a person's interest in her good name and integrity. *Brown v. City of Niota,* 214 F.3d 718, 722 (6th Cir.2000). To demonstrate possession of a state-created liberty interest, "a plaintiff must show that the 'governmental action taken ... deprived the individual of a right previously held under state law.' " *Cutshall v. Sundquist,* 193 F.3d 466, 479 (6th Cir. 1999) (quoting *Paul v. Davis,* 424 U.S. 693, 708, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

■ Klimik argues that defendants violated his right to procedural due process by failing to provide him notice and an opportunity to be heard prior to red-flag-

ging his address, an action that effectively deprived him of non-emergency police services from the Department.[5] To succeed on his claim, Klimik must establish that he possessed either a property or liberty interest in such services. Klimik fails to make this showing. Klimik does not demonstrate—nor does he even attempt to demonstrate—that, under Michigan law, he was entitled to have the Kent County Sheriff's Department respond to any and all non-emergency complaints he might make.[6] Furthermore, a review of Michigan law reveals no such entitlement.[7] Hence, Klimik fails to show that he has a protected property interest in the services denied to him.

Neither does Klimik show that he has a protected liberty interest in the services denied to him. First, *DeShaney* demonstrates that the due process clause does not bestow upon citizens a liberty interest in police protection. 489 U.S. at 195, 109 S.Ct. 998. As for state law, Klimik points to no statutory or constitutional language that bestows upon citizens the right to have a sheriff respond to all criminal complaints of a non-emergency nature.

Turning to Klimik's substantive due process claim, the substantive component of the due process clause imposes certain limitations on governmental deprivations of life, liberty, or property, independent of the procedural limitations imposed on such deprivations by procedural due process. *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.1992). This court has recognized that "[o]ne aspect of sub-

---

**5.** Klimik was not deprived of non-emergency police services altogether because the Michigan State Police had jurisdiction to respond, and in fact did respond, to such requests.

**6.** To the extent that the district court relied on *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), for the proposition that Klimik does not have a property interest in police services, the district court was in error. As the Supreme Court noted in *Roth*, the federal constitution does not create protected property interests for procedural due process purposes. 408 U.S. at 577. *DeShaney* was a substantive due process case holding that the due process clause does not require the state to protect citizens from each other and that failure to provide such services does not violate a person's liberty interests. While *DeShaney* does demonstrate that the state was not required under the federal constitution to provide Klimik police services, it does not answer whether the state, by virtue of its own laws, endowed Klimik with a property interest in such services.

**7.** The only Michigan law discovered regarding the duties of sheriff's departments is Mich. Comp. Laws § 51.76(2). The statute dictates that sheriff's departments "shall provide" certain services wit ...., the county in which they are located. These services include "[p]atrolling and monitoring traffic violations" and "[e]nforcing the criminal laws of [Michigan], violations of which are observed by or brought to the attention of the sheriff's department while providing the patrolling and monitoring required by this subsection." *Id.* § 51.72(2)(a)-(b). The law also provides that sheriff's departments shall render "[e]*mergency* assistance to persons on or near a highway or road patrolled and monitored as required by this subsection." *Id.* § 51.72(2)(d) (emphasis added).

The only affirmative obligation the statute imposes on sheriff's departments with respect to individual citizens is to respond to citizens' emergency requests. The law imposes no similar obligation with regard to non-emergency requests. It does not state that each citizen of a county is individually entitled to have her non-emergency requests and complaints answered by that county's sheriff's department. Moreover, by limiting the sheriff's departments' obligation to addressing criminal violations discovered through patrolling and monitoring traffic violations, the provision suggests that departments have no duty to respond to non-emergency criminal complaints independently filed by citizens. In sum, the statute does not support a finding that Klimik holds a property interest or entitlement in having his non-emergency complaints answered by the Department.

stantive due process is the right to be free of 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint* 325 F.3d 758, 763 (6th Cir.2003) (quoting *Pearson,* 961 F.2d at 1217). The limitations of substantive due process apply both to the legislative actions of governments and the executive actions of governments. *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). However, the criteria for determining whether a government action is arbitrary in violation of substantive due process "differ depending on whether it is legislation or a specific act of a governmental officer that is at issue" *Id.* When an action by an executive government official is at issue, as in this case, the action will be found to violate substantive due process "only when it 'can properly be characterized as arbitrary, or conscious shocking, in a constitutional sense.'" *Id.* at 847, 118 S.Ct. 1708 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). "[O]nly the most egregious official conduct" violates substantive due process under this standard. *Id.* at 846, 118 S.Ct. 1708.

Defendants' actions are not "most egregious." While denying a citizen's request for emergency services might shock the conscience, red-flagging a citizen's address and refusing to respond to a citizen's complaint of stolen flower pots, particularly when that citizen previously voiced doubts about the fairness of department investigations, do not. Indeed, as demonstrated in the analysis of Klimik's equal protection claim, the challenged actions—far from being arbitrary or capricious—had a rational basis. Therefore, Klimik's substantive due process claim is without merit.

Klimik cannot demonstrate that he possessed a property or liberty interest in non-emergency police services. Nor can he demonstrate that defendants' actions were arbitrary and capricious in violation of his substantive due process rights. Therefore, defendants must prevail on Klimik's due process claims as a matter of law. Consequently, we affirm the district court's grant of summary judgment to defendants on these claims.

## C. Request to Amend the Complaint

In determining that the Department was not a legal entity subject to suit, the district court assumed Klimik would substitute the present Sheriff, Stelma, as a defendant and proceeded on the basis of this assumption. On appeal, Klimik argues that summary judgment should be denied and that he should be allowed to amend his complaint to substitute Kent County as a defendant instead.

We hereby deny Klimik's request. Klimik cannot demonstrate that he is entitled to relief on any of his claims. Substituting Kent County as a defendant would not alter this determination and, hence, would be a meaningless exercise.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to defendants and deny Klimik's request to amend his complaint.