**N.I.P.P. ROYAL OAK, LLC; N.I.P.P., LLC; Christopher Swank; Doug Kauffman; and Jesse Morreale; Plaintiffs,**

v.

**CITY OF ROYAL OAK, Defendant.**

No. CIV. 05–71320.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 17, 2006.

Cindy R. Victor, Victor Firm, Utica, MI, for Plaintiff Counsel.

T. Joseph Seward, Cummings, McClorey, Livonia, MI, for Defendant Counsel.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs are former owners of the Royal Oak Music Theater, and they bring suit against the City of Royal Oak under 42 U.S.C. § 1983 for due process and equal protection violations. Defendant moves for judgment on the pleadings, and for the reasons that follow, I GRANT in part and DENY in part Defendant's motion.

## I. FACTUAL BACKGROUND

Paragon Investment Company, Ltd. ("Paragon") operated the Royal Oak Music Theater (the "Theater") and held a Class C liquor license, which included permits for Sunday sales and dance and entertainment. (Compl.¶ 8.) In August 2000, Paragon filed a bankruptcy petition, and Plaintiffs purchased Paragon's liquor license and leasehold interest in the Theater from the bankruptcy trustee. (Compl.¶ 10.) The Michigan Liquor Control Commission ("Michigan LCC") approved a management agreement in December 2000, allowing Plaintiffs to operate the Theater under Paragon's liquor license. (Compl.¶ 13.) In December 2000, Plaintiffs submitted a plan of operation ("Plan of Operation # 1") for the Theater to the Royal Oak Liquor Control Commission Committee ("City LCC"). (Compl.¶ 14, Ex. 4.) At a meeting of the City LCC, Plaintiffs said that under Plan of Operation # 1, they were not seeking a dance permit, and the Theater would not be operated as a dance club. (Compl. Ex. 4 at 11.) Plaintiffs' Plan of Operation # 1 was approved by the City LCC and the Royal Oak City Commission in December 2000. (Compl.¶¶ 14, 15, Exs.4, 5.) The City LCC and the City Commission also approved the transfer of Paragon's liquor license to Plaintiff N.I.P.P. Royal Oak, LLC ("NIPP Royal Oak") in March 2001. (Compl.¶¶ 16, 17, Exs.6, 7.)

In July 2001, the Michigan LCC issued a new Class C liquor license to Plaintiff NIPP Royal Oak. (Compl. ¶ 18, Ex. 8; Resp. at 5.) The license was approved by

the City and included permits for dance and entertainment, as well as Sunday sales. *Id.* Subsequently, Plaintiffs submitted another plan of operation ("Plan of Operation #2") to the City LCC and the City Commission, which was approved by both entities in January 2002. (Compl.¶¶ 19–21, Exs.9–11.) Plaintiffs have not alleged that dancing at the Theater was either requested or approved at that time pursuant to Plan of Operation #2.

In 2002, Plaintiffs entered negotiations with MCN Corp. regarding the latter's participation in the Theater. (Compl.¶35.) Plaintiffs allege they were to receive $1 million from MCN Corp. *Id.* In October 2002, Plaintiffs and MCN Corp. appeared before the City LCC requesting a "dance permit" for the Theater, despite the fact that Plaintiff NIPP Royal Oak's liquor license included a dance permit. (Compl.¶36, Ex. 13.) A public hearing on that request was held on December 5, 2002 before the City LCC, at which point Plaintiffs proposed, as an alternative, that a series of one-day temporary dance permits be issued for the Theater. (Compl. Ex. 14 at 7.) The City LCC recommended that one-day temporary dance permits be issued to Plaintiffs on a case-by-case basis upon approval by the City Commission. (Compl.¶38, Ex. 14.) On December 16, 2002, the City Commission reviewed the City LCC's recommendation, and approved a one-day dance permit for the Theater for New Year's Eve.[1] (Compl.¶39, Ex. 15.)

On January 9, 2003, Plaintiffs' request for a "dance permit" was discussed again at a public hearing before the City LCC.

(Compl.¶40, Ex. 16.) At the hearing, Deputy City Attorney Marcinkowski said that after the prior hearing, it was determined that the Theater does in fact have a dance permit attached to the liquor license. (Compl. Ex. 16 at 1.) He said that with Plaintiffs' consent, he would construe Plaintiffs' request for a "dance permit" as a request for dancing to be allowed at the Theater under its current plan of operation. *Id.* The City LCC recommended that this request be denied, and that recommendation was adopted by the City Commission at its January 27, 2003 meeting. (Compl.¶ 42, Exs.16, 17.) Plaintiffs allege that MCN Corp. withdrew from the deal because of the City's actions, causing Plaintiffs to lose at least $1 million. (Compl.¶ 43.)

In 2003, Plaintiffs began negotiations with Murray Hodgson, Peter Hendrickson, and Royal Oak Entertainment, LLC regarding the purchase of Plaintiffs' interest in the Theater. (Compl.¶ 44.) Those negotiations resulted in a management agreement whereby Hodgson, Hendrickson, and Royal Oak Entertainment, LLC would operate the Theater under Plaintiff NIPP Royal Oak's liquor license and dance permit. (Compl.¶ 45.) Royal Oak Entertainment, LLC submitted a plan of operation ("Plan of Operation #3") to the City LCC, which was the subject of public hearings on June 25 and July 15, 2003. (Compl.¶¶ 46–48, Exs.18, 19.) Plan of Operation #3 proposed to use the Theater in part as a venue for the SPACE Night Club. (Compl.Exs.18, 19.) At the July 15, 2003 hearing, the City LCC recommended that Plan of Operation #3 be denied. (Compl.¶ 48.) As a result, Plaintiffs allege that Hodgson, Hendrickson, and Royal

1. Plaintiffs complain that the City LCC and City Commission ignored the fact that Plaintiff NIPP Royal Oak already had a dance permit attached to its liquor license. (Compl.¶¶ 37–39.) However, Plaintiffs do not allege that they mentioned this dance permit at any hearing or meeting, so it is possible the City LCC and City Commission were unaware it existed.

Oak Entertainment, LCC withdrew from the management agreement with Plaintiffs. (Compl.¶ 50.) Plaintiffs claim they eventually sold their interest in the Theater to Jack Utsick Presents at a substantial loss. (Compl.¶ 53.)

## II. ANALYSIS

### A. Standing

Of the five Plaintiffs in this case, Defendant argues that only Plaintiff NIPP Royal Oak as the liquor license holder has standing to bring these claims. (Def.'s Br. at 5–8.) Plaintiffs attached a copy of the liquor license (with dance permit) to the Complaint, which shows Plaintiff NIPP Royal Oak as the sole licensee. (Compl. at Ex. 8.) Plaintiffs have not alleged that the other four Plaintiffs are also licensees. For ease of identification in this section, Plaintiffs N.I.P.P., LLC; Christopher Swank; Doug Kauffman; and Jesse Morreale will be referred to as the "non-licensee Plaintiffs."

### 1. Standard of Review for Whether a Party Has Standing

■ Whether a party has standing under Article III of the Constitution "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir.2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In every federal case, standing is a threshold inquiry, which requires the court to determine whether "a plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction to justify exercise of the court's remedial powers on his behalf." *Id.* (citation and internal quotation marks omitted).

■ To meet the constitutional limitations of standing under Article III, a plaintiff must satisfy three elements:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). The burden of establishing these elements lies with the party invoking federal jurisdiction. *Id.* at 561, 112 S.Ct. 2130.

### 2. As the Licensee, Only Plaintiff NIPP Royal Oak Has Standing

#### (a.) 42 U.S.C. § 1983 Procedural and Substantive Due Process Claims

Defendant argues that only Plaintiff NIPP Royal Oak has standing to bring these claims, and the non-licensee Plaintiffs lack standing because they cannot show "an invasion of a legally protected interest." (Def.'s Br. at 6.) For procedural and substantive due process claims, a plaintiff must allege a property or liberty interest protected by the Fourteenth Amendment. *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir.2001). Three protected interests can be identified in Plaintiffs' briefs: (1) a property interest in the dance permit attached to Plaintiff NIPP Royal Oak's liquor license; (2) a property interest in the approval of Plan of

Operation # 3; and (3) a liberty interest in operating the Theater.

### (1.) Property Interest in the Dance Permit

In July 2001, the Michigan LCC issued a Class C liquor license to Plaintiff NIPP Royal Oak, which included a permit for dance and entertainment. (Compl.¶ 18, Ex. 8.) Although Plaintiff NIPP Royal Oak is the sole licensee, all Plaintiffs maintain that "their" property interest in the dance permit was infringed when Defendant refused to allow Plaintiffs to operate the Theater as a dance venue. (Compl. ¶¶ 22–32, 52; Resp. at 5–6, 8, 11.) Plaintiffs argue that their due process rights were violated when Defendant denied their requests for dancing at the Theater without first revoking or suspending the dance permit as required by Michigan law. (Resp. at 11.) The Sixth Circuit has recognized that in Michigan only the holder of a liquor license has a protected property interest in the license. *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir.2001); *see also Royal Oak Entm't, LLC v. City of Royal Oak*, No. 04–72728, 2005 WL 2038586, **4–5, 2005 U.S. Dist. LEXIS 6401, *15 (E.D.Mich. Apr. 14, 2005). Accordingly, the non-licensee Plaintiffs lack standing to assert an injury to this property interest.

### (2.) Property Interest in the Approval of Plan of Operation # 3

In 2003, Plaintiffs began negotiations with Royal Oak Entertainment, LLC and others regarding the purchase of Plaintiffs' interest in the Theater. (Compl.¶ 44.) Those negotiations resulted in a management agreement whereby Royal Oak Entertainment, LLC and the other prospective buyers would operate the Theater under Plaintiff NIPP Royal Oak's liquor license and dance permit. (Compl.¶ 45.) Royal Oak Entertainment, LLC submitted Plan of Operation # 3 for the Theater to the City LCC, and the City LCC recommended denial of that plan in July 2003. (Compl.¶ 48.)

As this Court previously held, a non-licensed party does not have a property interest in the approval of a plan of operation, unless that non-licensed party is applying for a new license or for the transfer into the City of a new license. *Royal Oak Entm't, LLC*, No. 04–72728, 2005 WL 2038586, **5–6, 2005 U.S. Dist. LEXIS 6401 at *19; *see* City of Royal Oak Ord. No.2001–06 § 430–5(A). Moreover, Plan of Operation # 3 was not even submitted by any of the Plaintiffs. It was submitted by Royal Oak Entertainment, LLC, a prospective buyer for the Theater. (Compl.¶¶ 44–48.) Thus, the non-licensee Plaintiffs lack standing to claim an injury to this property interest.

### (3.) Liberty Interest in the Operation of the Theater

All five of the Plaintiffs assert that they had an ownership interest in the Theater. (Compl.¶¶ 10, 43, 44, 51, 53.) Plaintiffs argue that Defendant's decision not to allow dancing at the Theater "made it unfeasible for Plaintiffs to have a successful business operation at [the Theater] ...." (Resp. at 7; *see also* Compl. ¶¶ 52, 55.) The Sixth Circuit has long recognized that "the freedom to choose and pursue a career, to engage in any of the common occupations of life" is a protected liberty interest. *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir.1989) (citation and internal quotation marks omitted).

Plaintiffs appear to argue that because they have a protected interest in operating the Theater, they also have a protected interest in the benefits associated with Plaintiff NIPP Royal Oak's liquor license and dance permit. They seem to

argue that their business relationship with the licensee somehow entitles them to the benefit of operating the Theater as a dance venue. This argument is without merit. As the license holder, Plaintiff NIPP Royal Oak alone is entitled to the benefits of the license. *See Wojcik*, 257 F.3d at 609–11. The business operations of the non-licensee Plaintiffs might be affected when those benefits are taken away, but this alleged injury does not confer standing to challenge the deprivation of benefits to which they are not entitled. Only Plaintiff NIPP Royal Oak as the licensee has standing to bring claims predicated on a property interest in the license. *See id.* Therefore, the non-licensee Plaintiffs lack standing to claim that their protected interest in the Theater's operation was harmed by Defendant's decision not to allow dancing there.

*(b.) 42 U.S.C. § 1983 Equal Protection Claim*

■ Plaintiffs allege an equal protection violation based on the theory of selective enforcement against a "class of one." (Resp. at 15.) To establish such a claim, a plaintiff must show "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Klimik v. Kent County Sheriff's Dep't*, 91 Fed.Appx. 396, 400 (6th Cir. 2004). Plaintiffs argue that Defendant treated them less favorably than other liquor license holders without a rational basis for the difference in treatment. (Compl. ¶ 33; Resp. at 15–17.) However, only Plaintiff NIPP Royal Oak as the licensee has standing to assert it was treated differently than other liquor licensees.

In summary, because Plaintiffs N.I.P.P., LLC; Christopher Swank; Doug Kauffman; and Jesse Morreale lack standing to assert these due process and equal protection claims, they are hereby DISMISSED from this case.[2]

**B. Standard of Review for a Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is reviewed under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998). A court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Id.* In deciding a motion for judgment on the pleadings, the Court may consider all papers and exhibits appended to the complaint. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995).

*1. Procedural Due Process Claim*

■ A plaintiff must satisfy three elements in order to bring a procedural due process claim under 42 U.S.C. § 1983:(1) the plaintiff has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) the plaintiff was deprived of its interest within the meaning of the Due Process Clause; and (3) the state did not afford the plaintiff adequate procedural rights prior to the deprivation of its interest. *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir.2002). In the instant case,

---

2. Defendant also argues that the non-licensee Plaintiffs lack standing based on principles of corporate shareholder standing. (Def.'s Br. at 7–8; Reply at 2–3). It is unnecessary to address this argument because the non-licensee Plaintiffs are dismissed for the reasons previously discussed.

Plaintiff NIPP Royal Oak[3] has made factual allegations sufficient to withstand a motion to dismiss its procedural due process claim. However, although Plaintiff appears to argue that due process violations occurred on two separate occasions, only one of these incidents could form the basis of Plaintiff's claim.

First, Plaintiff asserts it was denied due process when the City would not allow it to operate the Theater as a dance venue. (Compl.¶¶ 41, 42.) As the license holder, Plaintiff has a protected property interest in the liquor license and dance permit. *Wojcik*, 257 F.3d at 609–11. Between December 2002 and January 2003, the City LCC and City Commission considered Plaintiff's requests to operate the Theater as a dance venue. (Compl.¶¶ 38, 39, Exs.14, 15.) Plaintiff was allowed a one-day dance permit for New Year's Eve, but its request to conduct dance events at the Theater was denied by the City Commission in January 2003. (Compl.¶¶ 39, 41, 42, Exs.15–17.)

■ Plaintiff seems to argue that the City's decision not to allow dancing effectively suspended or revoked Plaintiff's dance permit. (*See* Compl. ¶¶ 22–32; Resp. at 5–6, 8, 11.) Michigan law and the City of Royal Oak Liquor Control Ordinance require that certain procedures must be followed before a liquor license may be suspended or revoked. M.C.L. §§ 436.1501(2), 1903; City of Royal Oak Ord. No.2001–06 § 430–8. Plaintiff contends it was denied due process because Defendant failed to follow the specified procedures. (Compl. ¶¶ 22–32, 52; Resp. at 5–6, 8, 11.) These facts are sufficient to state a claim that Plaintiff's due process rights were violated.

Second, Plaintiff alleges a due process violation occurred in July 2003 when the City LCC recommended denial of Plan of Operation # 3 for the Theater. (Compl.¶¶ 48–50.) This Plan proposed to operate the Theater in part as a venue for the SPACE Night Club. (Compl.Exs.18, 19.) As this Court previously held, a liquor licensee has a property interest in the approval of a plan of operation, based on the City of Royal Oak's Liquor Control Ordinance. *Royal Oak Entm't, LLC,* No. 04–72728, 2005 WL 2038586, **6–7, 2005 U.S. Dist. LEXIS 6401 at *23; *see* City of Royal Oak Ord. No.2001–06 § 430–4(A).

■ However, for two reasons, these facts are not a sufficient basis for Plaintiff's procedural due process claim. First, Plaintiff did not actually submit Plan of Operation # 3 to the City—the Plan was submitted by Royal Oak Entertainment, LLC, a prospective buyer for the Theater. (Compl.¶¶ 44–46.) For Plaintiff to claim a due process violation, it must show that it actually sought and was denied the process it was due. Second, Plaintiff does not allege that Royal Oak Entertainment, LLC was acting on Plaintiff's behalf when it submitted Plan of Operation # 3 to the City. Under the rules promulgated by the Michigan Liquor Control Commission, "a licensee shall not allow a person whose name does not appear on the license to use or benefit from the license." Mich. Admin. Code 2003 Supplement R. 436.1041(1). There are two exceptions to this rule: (1) a "participating agreement" exists between the licensee and the non-licensed party, where the Commission approves the agreement or where the non-licensed party receives a percentage of sales of the licensed business; (2) the non-licensed party is approved by the Commission and named on a "participation permit." Mich.

---

**3.** Because the non-licensee Plaintiffs are dismissed for lack of standing, the remaining analysis will involve only Plaintiff NIPP Royal Oak.

Admin. Code 2003 Supplement R. 436.1041(2), (3). Plaintiff does not contend that it falls within either of these exceptions. Instead, Plaintiff alleges that Royal Oak Entertainment, LLC was to operate the Theater pursuant to a "management agreement," which Plaintiff does not allege was approved by the Commission. (Compl. ¶ 45; Resp. at 7.)

Defendant's motion is DENIED as to Plaintiff's procedural due process claim, although this claim is limited to the alleged due process violations that occurred between December 2002 and January 2003 when Plaintiff's requests to have dancing at the Theater were denied.

### 2. Substantive Due Process Claim

In contrast to procedural due process, the doctrine of substantive due process has been defined generally as "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed ...." *Pearson v. Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.1992). Plaintiff appears to be asserting an "arbitrary or capricious" substantive due process claim. *See* Resp. at 13–14; *Pearson*, 961 F.2d at 1217. ("The right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action is commonly referred to as a 'substantive due process right.' "). Plaintiff bases its substantive due process claim on the City's decision not to allow dancing at the Theater.[4] (Resp. at 13–14; Compl. ¶¶ 41, 42, Exs. 16, 17.)

 The Sixth Circuit has said that where state action has not deprived a plaintiff of a particular constitutional guarantee or does not shock the conscience,

that action survives a substantive due process challenge as long as it is rationally related to a legitimate state interest. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir.1997). In the instant case, Plaintiff has not identified a particular constitutional guarantee that was infringed, nor does Defendant's decision not to allow dancing at the Theater shock the conscience. *Cf. Braley v. Pontiac*, 906 F.2d 220, 226 (6th Cir.1990) (noting that police conduct that shocks the conscience generally involves excessive force or physical brutality). Thus, it is Plaintiff's burden to establish that Defendant's action was not rationally related to a legitimate government interest. *Valot*, 107 F.3d at 1228.

 Rational basis review is a deferential standard under which government action is afforded a strong presumption of validity. *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005). Defendant cites the following reasons in support of its January 2003 decision not to allow dancing at the Theater: "police overtime and crowd management issues, increased neighborhood disturbances and complaints, the increased potential for fights outside the Theatre needing police intervention .... [, and] increased costs to the City." (Def.'s Br. at 16.) The City LCC meeting minutes show that these concerns were discussed and formed a basis for denial of Plaintiff's request for dancing. (Compl.Ex. 16.) These reasons fall under the general heading of ensuring public health and safety, which is certainly a legitimate state interest. *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 592 (6th Cir.2003). Public fiscal concerns are also considered a legitimate gov-

---

4. For the same reasons discussed in the previous section regarding procedural due process, Plaintiff cannot base a substantive due process claim on the denial of Plan of Operation # 3.

ernment interest. *Valot*, 107 F.3d at 1228. Defendant's decision not to allow dancing at the Theater is rationally related to those interests.

■ Plaintiff argues that it is "entitled to test whether these reasons were genuine and sufficient." However, the Sixth Circuit has held that "under rational basis review, ... a purported rational basis may be based on 'rational speculation unsupported by evidence or empirical data' and need not have a foundation in the record." *Midkiff*, 409 F.3d at 770 (citation omitted) (upholding the district court's 12(b)(6) dismissal because the defendant water district had asserted legitimate interests behind its policy); *see 37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 620 (6th Cir.1997) ("[I]f any conceivable legitimate governmental interest supports the contested ordinance, that measure is not 'arbitrary and capricious' and hence cannot offend substantive due process norms."). Thus, given the deference required by courts under this standard of review, Defendant's motion is GRANTED as to Plaintiff's substantive due process claim.

### 3. Equal Protection Claim

■ Plaintiff claims it was denied equal protection based on the theory of selective enforcement against a "class of one." (Resp. at 15.) To establish such a claim, a plaintiff must show "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Klimik v. Kent County Sheriff's Dep't*, 91 Fed.Appx. 396, 400 (6th Cir. 2004). Plaintiff argues that Sangria's, which held a Class C liquor license with dance permit (like Plaintiff) and was located across the street from the Theater, is a similarly-situated business. (Compl. ¶ 33;

Resp. at 16.) Plaintiff alleges that Sangria's was permitted to operate as a dance venue, whereas Plaintiff's request to do the same was denied. *Id.* Defendant argues that Sangria's is not similarly situated because its plan of operation allowed for dancing, unlike the Theater's plan of operation. (Reply at 5.) However, construed in a light most favorable to Plaintiff, these facts are sufficient to support an equal protection claim, and Defendant's motion is DENIED as to this claim.

### III. CONCLUSION

In summary, the following Plaintiffs are DISMISSED from this case for lack of standing: N.I.P.P., LLC; Christopher Swank; Doug Kauffman; and Jesse Morreale. Defendant's motion is DENIED with respect to Plaintiff NIPP Royal Oak's procedural due process claim and equal protection claim. However, Plaintiff's procedural due process claim is limited to alleged violations between December 2002 and January 2003 when Plaintiff's requests to conduct dance events at the Theater were denied. Defendant's motion is GRANTED as to Plaintiff's substantive due process claim.

**IT IS SO ORDERED.**