NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0323n.06

No. 10-3252

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 16, 2011*

LEONARD GREEN, Clerk

RAFAEL MARDEROSIAN, et al., )
)
    Plaintiffs-Appellants, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR THE
CITY OF BEAVERCREEK, et al., )  SOUTHERN DISTRICT OF OHIO
)
    Defendants-Appellees. )

Before: DAUGHTREY, MOORE, and CLAY, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. A group of citizens, the plaintiffs here, filed this action against the City of Beavercreek, Ohio, claiming that their rights under the First and Fourteenth Amendments were violated when the City used an administrative process to modify a zoning ordinance permitting the expansion of a local Walmart store. The crux of the plaintiffs' complaint was that in failing to use a legislative process that would have permitted a public referendum, the City denied them the right to a referendum and to petition for the redress of grievances under the First Amendment and deprived them of certain liberty interests without due process of law, in violation of the Fourteenth Amendment. The district court granted summary judgment to the City, finding that the plaintiffs had not identified a liberty interest sufficient to support their due process claims and that the city council's action did not impermissibly burden an already-existing right to

referendum for purposes of the First Amendment. We find no basis on which to overturn the district court's decision and, therefore, we affirm.

In December 1991, the Beavercreek City Council adopted Ordinance No. 91-63, which changed the zoning designation of a 47-acre piece of property from agricultural to commercial with the following provisions:

> The total square footage of buildings and structures allowed to be constructed in Stage I of the development shall not exceed 232,000 square feet.
>
> A total of 204,600 square feet of additional building and structures shall be allowed to be constructed in Stage II of the development.
>
> Specific site plan approval and zoning permit approval for Stage II will not be granted by the City until access from north Fairfield Road to the 47.3 acre development can be provided in a manner and design that is acceptable to the City.

In September 1992, the planning commission approved a site plan for Stage I of the development, and a Walmart and a Sam's Club were both constructed on the property in accordance with the specifications contained in Ordinance 91-63.

In 1999, Walmart requested permission from the City to expand its store, in order to have the additional space necessary to offer groceries at the location. In response to this request, the city attorney submitted an opinion to the council suggesting that an expansion would violate Ordinance 91-63 because the building would then exceed the square-footage limitations. Thus, he concluded that in order to allow the expansion, it

would be necessary to amend Ordinance 91-63 legislatively. The council subsequently rejected Walmart's proposal.

In November 2006, Walmart once again sought to expand its store, this time through a request for a major modification to the original site plan, by adding 56,841 square feet to the existing Walmart building and 4,021 square feet to the Sam's Club building. In contrast to the previous opinion issued in response to the 1999 application for expansion, the City's lawyer concluded in response to the new application that the expansion could go forward with only administrative approval. This opinion was based on his review of the history of Ordinance 91-63, which he read to mean that the square-footage limits included in the ordinance were pertinent only until additional road access to the site was established. Because this access had already been secured, the city attorney concluded that the square-footage limits were no longer controlling and that the matter could be handled administratively.

As a result, the planning commission voted to recommend approval of the request for expansion and scheduled a public hearing on Walmart's request for a major modification. At the hearing, the city council denied a motion to handle the request legislatively and invoked an administrative process to approve the major modification by a vote of 5-2.

The plaintiffs in this case then filed suit in district court, seeking a declaratory judgment that the City's actions violated their rights under the First, Fifth, and Fourteenth

Amendments to the United States Constitution, as well as seeking damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1985. Additionally, they included a state law claim, alleging that the City's administrative approval of the modification was an *ultra vires* act. On motion by the City, Walmart was joined as a defendant to the action. On cross-motions for summary judgment, the district court ruled that the defendants were entitled to summary judgment on the plaintiffs' First Amendment and Due Process claims and dismissed the plaintiffs' state law claim without prejudice.

On appeal, the plaintiffs contend that the City's decision to approve Walmart's request for a major modification administratively denied the plaintiffs their right to constitutional due process. The Due Process Clause of the Fourteenth Amendment states, in pertinent part, that, "n[o] State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The constitutional inquiry is composed of two discrete steps: determining, first, whether there is a protected liberty or property interest at issue and, if so, whether a state actor has deprived the plaintiff of that right in a manner that contravenes notions of due process. *See Wojcik v. City of Romulus,* 257 F.3d 600, 609 (6th Cir. 2001).

For purposes of substantive due process claims, a liberty interest is one that is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 457 U.S. 197, 201-02 (1977). The plaintiffs here argue that their

state-created right to referendum meets this standard and is thus a constitutionally-protected liberty interest for purposes of fulfilling the first part of the due process inquiry.

The Supreme Court has repeatedly noted the importance of referendum rights as a democratic tool. *See City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 678 (1976) ("A referendum, however, is far more than an expression of ambiguously founded neighborhood preference. It is the city itself legislating through its voters an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest." (quoting *So. Alameda Spanish Speaking Org. v. Union City, California*, 424 F.2d 291, 294 (1970))). The Supreme Court has never held, however, that any particular right to referendum is guaranteed under federal law and, indeed, we have held to the contrary. *See Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993) (finding that the Constitution does not require a state to have any sort of ballot-initiative procedure).

Moreover, the Supreme Court has held that a violation of substantive due process will be found only where the actions of the state "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Simply put, the actions of the City in the present case do not meet this high standard. Although some members of the city council expressed doubt about the proposed procedure, they took action only after a period of debate and

deliberation. We thus conclude that the council did not proceed in a manner that "shocks the conscience" in violation of substantive due process.

Nor can the plaintiffs establish a deprivation of their right to procedural due process. That inquiry generally focuses on whether there existed adequate notice and an opportunity for the affected parties to be heard prior to the state action at issue. *See Hussein v. City of Perrysburg*, 617 F.3d 828, 832 (6th Cir. 2010) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 570 n.7 (1972)). The record before us shows that there was, in fact, a public hearing at which the plaintiffs' request that the modification be subjected to a referendum was heard, debated, and ultimately denied. Speaking hypothetically, we conclude that even if the plaintiffs could show the existence of a liberty interest in a state-created right to referendum, in the present case they were afforded the necessary process before being deprived of that alleged right when the City held a public hearing at which they were able to state their views.

As to the First Amendment claim, the plaintiffs allege that the City Council's actions violated their right to be free from overly restrictive conditions placed on the referendum process and their right to petition the government for redress of grievances. But, as noted above, there is no federal or constitutional right to the referendum process, although the Supreme Court has found that the right to free-speech encompasses a right to be free of overly restrictive conditions on the exercise of established referendum rights. *See Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 191-92 (1999) ("[T]he First

Amendment requires us to be vigilant in making those judgments [distinguishing between valid ballot-access provisions and invalid interactive speech restrictions], to guard against undue hindrances to political conversations and the exchange of ideas.").

Unlike the successful plaintiffs in *Buckley*, the plaintiffs here do not claim that their right to participate in a referendum has been impermissibly burdened – and cannot do so, because the citizens of Beavercreek had no right to referendum unless the council decision to adopt the zoning proposal was handled legislatively. By acting administratively rather than legislatively, the council ensured that a right to referendum never arose. Whether the council was correct in its decision to treat the zoning modification as an administrative manner is a question of state – not constitutional – law. In sum, the plaintiffs simply cannot challenge a restriction on their right to referendum when, under the facts of the case, no legislative act ever occurred and thus no right to referendum ever existed.

Furthermore, the present case is factually dissimilar from cases, such as *Buckley*, in which the Supreme Court has found a burden on referendum rights that implicates the First Amendment. In such cases, the plaintiffs challenged legislation that according to its own language directly regulated or limited the referendum process. *See id.* at 199-200 (striking down a Colorado statute that required petition-circulators to wear identification badges); *Meyer v. Grant*, 486 U.S. 414 (1988) (holding invalid a Colorado statute that prohibited payment for the circulation of ballot-initiative petitions). In this case, by

contrast, the plaintiffs do not challenge a limitation on their referendum rights but, instead, challenge approval of the zoning modification as an administrative act. Of course, the plaintiffs are correct in their assertion that *if* the city had acted legislatively, the plaintiffs *could* have asserted their right to referendum. The City's actions, however, did not in any way directly affect the referendum rights of the plaintiffs.

We thus hold, for the reasons set out above, that the district court did not err in granting summary judgment to the defendants on the plaintiffs' constitutional claims. The district court also dismissed without prejudice the plaintiffs' state-law claim that the zoning modification in dispute constituted an *ultra vires* act, a decision that the plaintiffs have apparently waived on appeal, given a merely perfunctory allusion to the issue in the their brief in this court. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). In any event, the record fails to show that the district court abused its discretion in declining to retain jurisdiction over the plaintiffs' state-law claim.

AFFIRMED.