NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0444n.06

No. 17-2393

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ACUITY INSURANCE COMPANY; named on initiating document as Acuity as assignee of Masterlink Concrete Pumping, LLC; MASTERLINK CONCRETE PUMPING, LLC, | ) ) ) ) ) | **FILED**<br>Aug 28, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN<br>DISTRICT OF MICHIGAN |
| MCDONALD'S TOWING AND RESCUE, INC., | ) ) | |
| Defendant-Appellee. | ) | |

BEFORE:   GIBBONS, STRANCH, and BUSH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**   After a concrete pump truck belonging to plaintiff Masterlink Concrete Pumping, LLC, broke down on I-94 in Michigan, defendant McDonald's Towing and Rescue, Inc., was hired to tow the vehicle to Indiana. While McDonald's was towing the vehicle, it became detached from the tow truck and was badly damaged. Masterlink and its insurer, fellow plaintiff Acuity Insurance Company, filed suit against McDonald's under the Carmack Amendment, which holds a motor carrier liable for damages to goods it transported interstate. However, the Amendment exempts from its coverage "the emergency towing of an accidentally wrecked or disabled motor vehicle." 49 U.S.C. § 13506(b)(3). The district court granted summary judgment for McDonald's because it held that the tow fell within the Amendment's "emergency towing" exemption. We affirm the judgment of the district court.

I.

The material facts are not in dispute. On the morning of September 30, 2015, Masterlink driver Robert Babcock III was driving a concrete pump truck on I-94 eastbound from Michigan to Indiana. At around 9:00 A.M., while Babcock was still in Michigan, the truck malfunctioned. He pulled over to the right shoulder to report the problem, and a towing request was sent by Masterlink to Allstate Road Service. Babcock left the scene sometime between 1:00 and 2:00 P.M. with the truck doors unlocked and the keys left in the ignition for the towing company.

Meanwhile, McDonald's Towing received a call from Allstate about the pump truck that evening, and Jacob Lamphere was dispatched to respond to the call. At 8:37 P.M., Lamphere contacted Zach Clothier, the operations director at McDonald's, to tell him that the pump truck was very large and that he did not know if he could tow it with the materials he had with him. Clothier ultimately decided that they should wait until the following morning to tow the vehicle because he believed "it needed a different wrecker" and "[i]t was getting very late, it was dark, and it was a large piece of equipment, and we needed to be able to see what we were doing to perform the service." DE 36-2, Ex. 6: Clothier Depo., Page ID 474.

The next morning, October 1, 2015, Clothier sent Warren Sprague and Aaron Cowles to tow the truck. Sprague and Cowles arrived at the truck at about 10:00 A.M. They hooked the pump truck around the frame of their towing vehicle and secured it with chains. They then towed it off the highway to the nearest exit, where they stopped at a Marathon gas station to readjust the chains and make sure the truck was properly secured. After they were back on I-94 and had been driving for several miles, Sprague and Cowles realized that the pump truck had become detached from the tow truck. The truck subsequently rolled over in the median and was totaled.

Pursuant to its insurance policy, Masterlink made a claim with Acuity for the damages it suffered as a result of the loss of the pump truck. Acuity and Masterlink then brought the instant action, alleging that McDonald's was liable under the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995. *See* 49 U.S.C. § 14706. Both parties filed summary judgment motions. The district court granted summary judgment to McDonald's Towing after it concluded that the tow job was an "emergency towing of an accidentally wrecked or disabled vehicle" and therefore exempt from the Carmack Amendment under 49 U.S.C. § 13506(b)(3).

## II.

When evaluating a district court's decision to grant summary judgment, this court applies the *de novo* standard of review. *Simpson v. Ernst & Young*, 100 F.3d 436, 440 (6th Cir. 1996). In contrast, a district court's denial of a summary judgment motion is reviewed for abuse of discretion. *Wojcik v. City of Romulus*, 257 F.3d 600, 608 (6th Cir. 2001) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, the material facts are not in dispute. Thus, the only issue is whether one of the parties is entitled to judgment as a matter of law.

## III.

The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act, 24 Stat. 379. *See, e.g.*, *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010). "The Amendment restricts carriers' ability to limit their liability for cargo damage" by "mak[ing] a motor carrier fully liable for damage to its cargo unless the shipper has

agreed to some limitation in writing." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015) (citing 49 U.S.C. § 11706(a), (c); § 14101(b)). The Amendment states in relevant part:

> A carrier . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported . . . .

49 U.S.C. § 14706(a)(1). The plaintiffs argue that McDonald's, as a "carrier" that transported the pump truck, is liable for the damages arising from the pump truck's destruction.

However, the Amendment has an exception in 49 U.S.C. § 13506(b): "neither the Secretary nor the Board has jurisdiction under this part over . . . (3) the emergency towing of an accidentally wrecked or disabled motor vehicle." The district court granted summary judgment to McDonald's based on its conclusion that the towing of Masterlink's truck fell within the "emergency towing" exception to the Amendment. We agree with the district court.

A.

This issue is one of statutory construction, and therefore the correct place to begin is the text of the statute. *See, e.g.*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004))). "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). "If the words [of a law] are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative

fields in search of a different meaning." *Caminetti v. United States*, 242 U.S. 470, 490 (1917). We conclude that the statutory text here is unambiguous.

The statute does not define "emergency towing of an accidentally wrecked or disabled motor vehicle," so the district court properly turned to both the Oxford English Dictionary and Merriam-Webster to determine the dictionary definition of "emergency." The Oxford English Dictionary defines "emergency" as "a state of things unexpectedly arising, and urgently demanding immediate attention," 7 Oxford English Dictionary 231 (2012), while Merriam-Webster defines it as "an unforeseen event or condition requiring prompt action," The Merriam-Webster Dictionary New Edition 234 (2016). Similarly, the American Heritage Dictionary defines "emergency" as "[a] serious situation or occurrence that happens unexpectedly and demands immediate attention." 4 American Heritage Dictionary of the English Language 584 (2006). Because the statute does not otherwise define "emergency," we give the word its ordinary meaning, as found in these dictionary definitions. *See BP Am. Prod. Co.*, 549 U.S. at 91. Thus, an "emergency towing" is one that happens in response to unforeseen circumstances requiring immediate attention.

### B.

The plaintiffs do not dispute the dictionary definitions of "emergency"; instead, they argue that the tow job at issue does not conform to them. The plaintiffs claim that because the tow truck was left unattended on the shoulder of the road overnight and there were no complaints or orders to move it from law enforcement, the towing "was not a serious, unexpected, or dangerous situation that required immediate attention." CA6 R. 18, Appellants' Br., at 27. The plaintiffs view the definition of "emergency" too rigidly. Here, the situation was almost indisputably "unexpected," as Babcock could not have predicted that his truck would malfunction that morning on the

interstate. The situation was also "serious," since a large truck parked on the shoulder of I-94 increases the risk of accidents. Further, the overnight delay is insufficient to remove the tow from the purview of § 13506. The defendant did not leave the truck overnight due to a lack of urgency; rather, as Clothier testified, the tow was postponed until morning because the truck was larger than expected and it was dark outside and difficult to see. The fact that the truck was not removed within minutes, or even hours, of its breakdown does not negate the emergency nature of the situation. Instead, we think that the crucial point is one emphasized by the district court, which is that the truck *had to be moved*—towing it was not optional. While it was possible for there to be a brief delay in towing the vehicle, Masterlink could not have chosen to abandon it there indefinitely. Thus, we conclude that the tow job was an "emergency" as that word is ordinarily understood. Because there is no ambiguity as to the meaning of "emergency," and because the facts here bring this tow job clearly within the meaning of a "an emergency tow,"[1] we hold that the district court properly granted summary judgment to the defendant, McDonald's Towing.

## C.

The plaintiffs also argue that even if the tow job began as an "emergency tow," the emergency ceased when McDonald's moved the truck to the gas station to check that it was properly secured. This argument also fails. Dividing the tow into discrete "steps" in this way risks

---

[1] The plaintiffs attempt to turn the focus from the plain meaning of § 13506 to a regulation from the Federal Motor Carrier Safety Administration ("FMCSA"). They argue that 49 C.F.R. § 390.23(a), which exempts "tow trucks responding to emergencies" from federal motor safety regulations, effectuates 49 U.S.C. § 13506(B). 49 C.F.R. § 390.23(a) defines the emergency tow truck exemption as "effective only when a request has been made by a Federal, State or local police officer for tow trucks to move wrecked or disabled motor vehicles." 49 C.F.R. § 390.23(a). Since there was no request from law enforcement for Masterlink to move the truck, the plaintiffs argue that according to § 390.23(a), the tow at issue was not an "emergency" to be exempt from liability under 49 U.S.C. § 13506(b). However, the plaintiffs cite no authority for their proposition that 49 C.F.R. § 390.23(a) provides the controlling—or even a persuasive—definition of "emergency" for purposes of 49 U.S.C. § 13506. Section § 390.23 is part of the regulatory scheme for motor carrier safety, whereas the Carmack Amendment focuses on economic liability for cargo damages. We decline to depart from the statutory text by reading into it a regulation from an entirely different regulatory scheme.

penalizing McDonald's for exercising appropriate caution in attempting to make sure the pump truck was properly secured to the tow truck. Interpreting the statute as plaintiffs propose would mean that a tow truck driver would not be able to stop for the restroom or food without removing his towing company from the Carmack Amendment's exception. We therefore conclude that the district court properly granted summary judgment to McDonald's Towing.[2]

IV.

Finally, the plaintiffs argue that the district court improperly denied their motion for partial summary judgment. In their motion, the plaintiffs argued that they had established liability under the Carmack Amendment and asked the court to enter a judgment in favor of Acuity in the amount of $341,661. They requested a trial solely to determine the amount of Masterlink's damages. Because we have concluded that the tow was exempt from the Carmack Amendment, entitling McDonald's to summary judgment, we also reject the plaintiffs' argument that the district court abused its discretion in denying their motion for summary judgment.

V.

For the foregoing reasons, we affirm the judgment of the district court.

---

[2] We cite no case law interpreting the exemption because there is almost none in existence. The only relevant case is from the Western District of Louisiana. In *Mountain Movers Transportation & Logistics LP v. Continental Trans Express, Inc.*, the court applied the emergency tow exemption to two tow truck companies, one that had initiated the tow of a truck with mechanical problems, and one that was called onto the scene to assist when the first company was not able to complete the tow. 2012 WL 6738299, at *1–3 (W.D. La. Dec. 27, 2012). While *Mountain Movers* is not directly on point, we find it persuasive insofar as it shows that a court has applied the emergency towing exception in a situation involving a time delay. *See id.* Also notable is that the court made no mention of law enforcement involvement in the incident. *Id.*